IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARY E. SHEPARD and the ILLINOIS )
STATE RIFLE ASSOCIATION, )
                              )
        Plaintiff, )
                              )
        -vs- )       No. 11-405
                              )
LISA M. MADIGAN, solely in her official )
capacity as ATTORNEY GENERAL OF )
ILLINOIS, et al., )
                              )
        Defendants. )

## LOCAL RULE 7.1(c) STATEMENT

       Defendants file the attached reply brief pursuant to Local Rule 7.1(c).  Local Rule

7.1(c) allows a party to file a reply brief in support of a motion to dismiss "in exceptional

circumstances."  This case is "exceptional" because it presents constitutional issues of first

impression and seeks to enjoin the enforcement of public safety laws throughout the State

of Illinois.  Accordingly, defendants respectfully file a reply brief in support of their motion

to dismiss.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARY E. SHEPARD and the ILLINOIS STATE RIFLE ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| -vs- | ) ) | No. 11-405 |
| LISA M. MADIGAN, solely in her official capacity as ATTORNEY GENERAL OF ILLINOIS, et al., | ) ) ) ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### I.  Plaintiffs' Facial Challenge Fails to State A Cause of Action

Plaintiffs challenge Illinois's laws on behalf of themselves and all "other law-abiding citizens" of Illinois.  Doc. 2 at 9.[1]  But they can succeed in this facial challenge only by showing that "'no set of circumstances exists under which the Act would be valid,' i.e., that the law is unconstitutional in all of its applications."  *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  As discussed in defendants' motion to dismiss, the challenged laws may be constitutionally applied to a host of people and situations, even if all of plaintiffs' theories are correct.  *See* Doc. 27 at 4-6.  Plaintiffs' response does not attempt to demonstrate otherwise.  Thus, plaintiffs have not shown "'that no set of circumstances exists under which the Act would be valid,'" *Washington State Grange*, 552

---

[1] In their response, plaintiffs also purport to raise an as-applied challenge.  Doc. 40 at 9.  If so, their complaint still should be partially dismissed as to their facial challenge.  *See Baltz v. Will County*, 609 F.Supp. 992, 996 (N.D. Ill. 1985).  And if plaintiffs' facial challenge is dismissed, then plaintiffs' requests for summary judgment, *see* Docs. 38 & 39, and a preliminary injunction, *see* Docs. 20 & 21, should be denied.  For if plaintiffs challenge the laws only as applied, then defendants are entitled to discovery to determine whether plaintiffs are individually qualified to possess firearms, as their complaint alleges.

1

U.S. at 449 (quoting *Salerno*, 481 U.S. at 745), and their facial challenge fails.[2]

## II.   The Challenged Statutes Do Not Implicate The Core Second Amendment Right To Bear Arms.

The Second Amendment codified the preexisting English right to bear arms. *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008).  As defendants have shown, this right was not historically understood to include a right to carry firearms in public for personal self-defense.  *See* Doc. 27 at 12-16.  Thus, no such right is "core" under the Second Amendment, and Illinois's statutes should receive, at most, intermediate scrutiny.  *Id.*

In response, plaintiffs observe that English weapons laws were most frequently enforced where the carrying of arms was "apt to terrify the people."  Doc. 40 at 14.  They then *assume* that carrying personal firearms in public was not considered terrifying.  *See id.*  But this assumption lacks historical support.  Carrying firearms in public spaces was rare historically, and all firearms were considered unusually dangerous weapons. *See, e.g.*, *King v. Hutchinson*, 168 Eng. Rep. 273, 276 (1784) ("guns, pistols, daggers, and instruments of war" are "dangerous" and "offensive" weapons); *State v. Huntly*, 1843 WL 891, at *3 (N.C. 1843) ("No man amongst us carries [a gun] about with him, as one of his every day accouterments — as part of his dress — and never we trust will the day come when any deadly weapon will be worn or wielded in our peace loving and law-abiding State, as an appendage of manly equipment.").  Thus, carrying a firearm in public was considered "terrifying" in itself — no additional violence, threats, or breach of the peace were necessary to justify criminal liability.  *See, e.g.*, *Chune v. Piott*, 80 Eng. Rep. 1161 (1614) (Croke, J.) ("Without all question, the sheriffe hath power to commit . . . if contrary to the

---

[2] If, as plaintiffs argue, *Ezell v. City of Chicago*, 2011 WL 2623511 (7th Cir. 2011), holds that laws with constitutional applications may be facially invalid, *see* Doc. 40 at 7-8, that holding conflicts with Supreme Court precedent, *see Washington State Grange*, 552 U.S. at 449, and defendants reserve the right to challenge it on appeal.

2

Statute of Northampton, he sees any one to carry weapons in the high-way, in terrorem populi Regis; he ought to take him, and arrest him, notwithstanding he doth not break the peace in his presence."); A Bill for the Office of Coroner and Constable (March 1, 1682), reprinted in *The Grants, Concessions and Original Constitutions of the Province of New Jersey* 251 (Aaron Leaming & Jacob Spicer, eds., 2002) (requiring constables to swear that "I will endeavour to arrest all such persons, as in my presence, shall ride or go arm'd offensively"); Robert Gardiner, *The Compleat Constable* 18 (1692) (constable may seize weapons of any person "wear[ing] or carry[ing] any Daggers, Guns or Pistols Charged"); Harry Toulmin, *The Magistrate's Assistant* 5 (1807) ("there may be an affray, where there is no actual violence; as where a man arms himself with dangerous and unusual weapons, in such a manner as will naturally cause terror to the people"); Dangerous Weapons, reprinted in *The Salem Gazette*, June 2, 1818, p. 4, col. 1 ("As it is well known to be an offence against law to ride or go armed with…firelocks, or other dangerous weapons, it cannot be doubted that the vigilant police officers…will arrest" violators.).

Even plaintiffs' own sources establish as much, once their selective reading is stripped away.  Citing Hawkins's treatise, plaintiffs argue that "Persons of Quality" did not offend the English weapons laws.  Doc. 40 at 14.  But, as defendants explain elsewhere, this narrow exception applied only to aristocrats wearing weapons for purely ceremonial purposes.  *See* Doc. 28 at 10 (citing 2 William Hawkins, *Treatise on the Pleas of the Crown* 601 (Thomas Leach, ed.) (7th ed. 1795)).  Indeed, Hawkins wrote that, while a man was free to use arms to defend his house, "a man cannot excuse the wearing of such armour in publick, by alledging that such a one threatened him, and that he wears it for the safety of his person from his assault."  Hawkins at 21.  Lord Coke, whom plaintiffs also cite, similarly described, and relied on, a case where the defendant, after being arrested for

publicly carrying weapons, claimed in his defense that the weapons were only for his personal protection.  *See* 3 Coke, *Institutes of the Laws of England* 161-62 (1797 ed.). The court, Coke tells us, rejected this defense.  *See id.* at 162.[3]

Plaintiffs' remaining historical arguments are similarly unpersuasive, often relying on sources written decades or centuries after the relevant time period.  *See, e.g.*, Doc. 40 at 15 (citing an English case from 1914).  Plaintiffs have not shown, and cannot show, that the Second Amendment was originally understood to protect a "core" right to carry firearms in public for personal self-defense.  Therefore, intermediate scrutiny, at most, should apply.

**III.     The Challenged Statutes Satisfy Intermediate Scrutiny.**

Plaintiffs nevertheless argue, without citation, that the Court should apply strict scrutiny.  *See* Doc. 40 at 23.  But no federal appellate court has ever done so in a Second Amendment case.  *See Nordyke v. King*, 644 F.3d 776, 782-83 (9th Cir. 2011) (collecting cases); *but cf. United States v. Engstrum,* 609 F.Supp.2d 1227, 1231-35 (D. Utah 2009) (upholding, under strict scrutiny, federal ban on firearms possession by domestic violence misdemeanants).   And, because the right asserted in this case was unknown to the Second Amendment's framers, there is no need for this Court to change course now. Accordingly, strict scrutiny is inapplicable.

 Intermediate scrutiny demands only that the law in question be "substantially related to an important government objective."  *Clark v. Jeter*, 486 U.S. 456, 461 (1988). Plaintiffs argue that the challenged statutes do not meet this standard — specifically, they contend the statutes are not "logical" because plaintiffs can imagine competing logical inferences, unsupported by data because plaintiffs can muster competing data, and

---

[3] Thus plaintiffs' assertion that "Coke did *not* say that an individual could not carry an arm for self defense in public," Doc. 40 at 15, is puzzling. That is, in fact, precisely what Coke said.

impermissible because other States disagree with Illinois's policy choice.  *See* Doc. 40 at 23-24.  But the fact that people reasonably disagree about a law does not mean it fails intermediate scrutiny.  *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 437 (2002) (plurality op.) (under intermediate scrutiny, government "does not bear the burden of providing evidence that rules out every theory . . . inconsistent with its own"); *G.M. Enterprises, Inc. v. Town of St. Joseph*, 350 F.3d 631, 639 (7th Cir. 2003) ("Although this evidence shows that the Board might have reached a different and equally reasonable conclusion . . . , it is not sufficient to vitiate the result reached in the Board's legislative process" under intermediate scrutiny.).  Thus, the mere fact that plaintiffs disagree with Illinois's policy choices, and can muster facts to support their disagreement, does not save their complaint from dismissal.

To summarize, plaintiffs cannot support a facial challenge because they have not shown that the challenged statutes are unconstitutional in all applications.  Nor should the challenged statutes receive anything more than intermediate scrutiny.  Nor, finally, have plaintiffs shown that the challenged statutes lack a substantial relation to an important government interest.  Accordingly, this Court should grant defendants' motion to dismiss.

Respectfully submitted,

LISA MADIGAN, ATTORNEY GENERAL OF THE STATE OF ILLINOIS, et al.,
Defendants,

Terence J. Corrigan, #6191237
David A. Simpson, #6300876
Assistant Attorneys General
500 South Second Street
Springfield, IL 62706

LISA MADIGAN, Attorney General,
State of Illinois,
Attorney for Defendants,
By:  s/ David A. Simpson
David A. Simpson
Assistant Attorney General

5

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2011, I electronically filed Memorandum of Law in Support of Defendants' Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

whoward@freebornpeters.com

jableyer@bleyerlaw.com

and I hereby certify that on August 29, 2011, I mailed by United States Postal Service, the document to the following nonregistered participant:

None

Respectfully submitted,

By: /s/ David A. Simpson
David A. Simpson
Assistant Attorney General
Attorney for Defendants
500 South Second Street
Springfield, IL  62706
Telephone:  (217) 782-5819
Facsimile:  (217) 524-5091
dasimpson@atg.state.il.us