# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS CARRY, <br><br> Plaintiffs, <br><br> v. <br><br> LISA MADIGAN, in her official capacity as Attorney General for the State of Illinois, and HIRAM GRAU, in his official capacity as Director of the Illinois State Police, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> 11-cv-03134 |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter is before the Court on the Motion for Preliminary and/or Permanent Injunction (the "Injunction Motion") of Plaintiffs Michael Moore, Charles Hooks, Peggy Fechter, Jon Maier, Second Amendment Foundation, Inc., and Illinois Carry.  See d/e 13.  The Court also considers Defendants Lisa Madigan and Hiram Grau's Motion to

Dismiss. See d/e 24. This Court finds that the Illinois "Unlawful Use of Weapons" and "Aggravated Unlawful Use of a Weapon" statutes do not violate Plaintiffs' Second Amendment rights. The United States Supreme Court and the Seventh Circuit have recognized only a Second Amendment core individual right to bear arms inside the home. Further, even if this Court recognized a Second Amendment right to bear arms outside of the home and an interference with that right, the statutes nonetheless survive constitutional scrutiny. Therefore, Plaintiffs cannot show a likelihood of success on the merits of their claim and thus cannot succeed on the Injunction Motion. For reasons further discussed below, the Injunction Motion is DENIED and the Motion to Dismiss is GRANTED.

## I. BACKGROUND

On May 19, 2011, Plaintiffs filed a one-count Amended Complaint alleging that the Illinois Unlawful Use of Weapons ("UUW") statute (720 ILCS 5/24-1) and the Aggravated Unlawful Use of a Weapon ("AUUW") statute (720 ILCS 5/24-1.6) violate the Second Amendment.

Specifically, Plaintiffs allege that 720 ILCS 5/24-1(a)(4), 720 ILCS 5/24-1(a)(10), and 720 ILCS 5/24-1.6(a) are unconstitutional as applied because the statutes prohibit the carry of loaded and operable firearms in public and thereby violate Plaintiffs' rights under the Second Amendment as recognized by <u>District of Columbia v. Heller</u>, 554 U.S. 570, 592 (2008), and made applicable to the States by <u>McDonald v. Chicago</u>, 130 S. Ct. 3020, 3026 (2010). Plaintiffs argue that the Second Amendment, as interpreted by the Supreme Court, allows Plaintiffs to carry firearms, concealed or otherwise, in public.

Plaintiffs first challenge the Illinois "Unlawful Use of Weapons" statute, 720 ILCS 5/24-1, which criminalizes the carrying or possession of a firearm outside of the home except under certain circumstances. The statute provides, in pertinent part:

> (a) A person commits the offense of unlawful use of weapons when he knowingly:
>
> * * *
>
> (4) Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol,

3

revolver, stun gun or taser or other firearm, except that this subsection (a) (4) does not apply to or affect transportation of weapons that meet one of the following conditions:

> (i) are broken down in a non-functioning state; or
> (ii) are not immediately accessible; or
> (iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card; or . . .

**\* \* \***

(10) Carries or possesses on or about his person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm. . . .

(b) Sentence.  A person convicted of a violation of subsection 24-1(a)(1) through (5), subsection 24-1(a)(10), subsection 24-1(a)(11), or subsection 24-1(a)(13) commits a Class A misdemeanor. . . .

Plaintiffs also challenge the Illinois "Aggravated Unlawful Use of a Weapon" statute, 720 ILCS 5/24-1.6, which criminalizes the carrying or possession of a firearm outside of the home when the firearm is loaded

and accessible or when the firearm is unloaded but ammunition is immediately accessible.  The statute provides, in pertinent part:

(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; or

(2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or
(B) the firearm possessed was uncased, unloaded and the ammunition for the weapon was

5

immediately accessible at the time of the offense

* * *

(d) Sentence.
> (1) Aggravated unlawful use of a weapon is a Class 4 felony; a second or subsequent offense is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years.

Plaintiffs claim that the UUW and AUUW statutes criminalize the carrying of a functional firearm on one's person in public and, therefore, violate their Second Amendment right to bear arms.

On July 7, 2011, Plaintiffs filed the Injunction Motion. Plaintiffs argue the Supreme Court ruled in Heller, 554 U.S. at 592, that the Second Amendment "guarantee[s] the right to possess and carry weapons in case of confrontation." See Pls.' Mem. Supp. Prelim. and/or Perm. Inj. (d/e 14) at 1. Plaintiffs cite McDonald, 130 S. Ct. at 3026, for the proposition that the Supreme Court incorporated that right "fully" against the States. Plaintiffs further contend that, because Illinois' prohibitions on the carrying of guns necessarily violates Plaintiffs' Second Amendment rights, an injunction must be issued against Defendants

6

according to <u>Ezell v. City of Chicago</u>, 651 F.3d 684 (7th Cir. 2011).

At the August 4, 2011 hearing on the Injunction Motion, Defense counsel stated that they do not contest Plaintiffs' assertion that Lisa Madigan and Hiram Grau are properly named as Defendants. <u>See</u> Prelim. Inj. Hr'g Tr. (d/e 37) at 33-34, Aug. 4, 2011. Additionally, Defendants offered as evidence reports about the efficacy of firearms control. <u>Id.</u> at 4. Plaintiffs objected to the reports' relevance under Federal Rule of Evidence 401, and this Court reserved ruling. <u>Id.</u> This Court now finds that the reports offered by Defendants at the August 4, 2011 hearing are relevant to the Injunction Motion in that they affect this Court's analysis of whether the UUW and AUUW statutes survive constitutional scrutiny. Therefore, the Court accepts the reports into evidence and now rules on the remaining issues.

## II.  JURISDICTION & VENUE

The federal question posed by Plaintiffs' claimed violation of their Second Amendment rights gives this Court subject matter jurisdiction. <u>See</u> 28 U.S.C. § 1331. Personal jurisdiction and venue requirements are

7

satisfied because the relevant acts occurred in this judicial district. <u>See</u> <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) (stating that personal jurisdiction exists where a defendant "purposefully avail[ed] [himself or herself] of the privilege of conducting activities" in the forum state); 28 U.S.C. §1391(b) (providing that venue in non-diversity cases is proper in a judicial district where any defendant resides, if all defendants reside in the same State).

## III.  STANDING

"Standing exists when the plaintiff suffers an actual or impending injury, no matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury." <u>See</u> <u>Ezell</u>, 651 F.3d at 695 (quoting <u>Bauer v. Shepard</u>, 620 F.3d 704, 708 (7th Cir. 2010)) (internal quotation marks omitted).  By asserting that the Second Amendment gives them a right to carry firearms in public and that Illinois' UUW and AUUW statutes deprive them of that right, the four individual Plaintiffs have clearly alleged injury and causation. Because a decision enjoining enforcement of the UUW and AUUW

statutes would redress Plaintiffs' alleged injury, Plantiffs have also satisfied the requirement that a judicial decision in their favor would redress their injury.

Just as the four individual Plaintiffs have standing to seek injunctive relief, so, too, do associational Plaintiffs Second Amendment Foundation, Inc., and Illinois Carry.  Second Amendment Foundation, Inc. and Illinois Carry have members who assert that they would carry firearms in Illinois but for the UUW and AUUW statutes.  These two organizations meet the requirements for associational standing because: "(1) their members would otherwise have standing to sue in their own right; (2) the interests the associations seek to protect are germane to their organizational purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual association members in the lawsuit."  Ezell, 651 F.3d at 696 (citing United Food & Commercial Workers Union Local 751 v. Brown Group, 517 U.S. 544, 553 (1996); Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343 (1977); Disability Rights Wisconsin v. Walworth

<u>County Board of Supervisors</u>, 522 F.3d 796, 801-02 (7th Cir. 2008)).

## IV. MOTION FOR PRELIMINARY INJUNCTION

This Court first considers Plaintiffs' Injunction Motion, rather than Defendants' Motion to Dismiss, because the Parties have more fully briefed the constitutionality of the challenged statutes with respect to the Injunction Motion and presented oral argument on the Injunction Motion at the August 5, 2011 hearing.

Plaintiffs argue that the Supreme Court in <u>Heller</u> determined that individuals have a Second Amendment right to carry firearms, concealed or visible, in public and, therefore, the Illinois UUW and AUUW statutes violate the Second Amendment by prohibiting individuals from carrying functioning firearms in public. <u>See</u> Pls.' Mem. Supp. Prelim. and/or Perm. Inj. at 1-3 (citing <u>Heller</u>, 554 U.S. at 584; 720 ILCS 5/24-1; 720 ILCS 5/24-1.6). To prevent further violations of these alleged rights, Plaintiffs seek a preliminary injunction or, in the alternative, a permanent injunction.

A party seeking a preliminary injunction must initially demonstrate

that: (1) the claim has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) irreparable harm will result if preliminary relief is denied.  See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc., 549 F.3d 1079, 1086 (7th Cir. 2008).  If the moving party fails to demonstrate any one of these three initial requirements, a court must deny the request for a preliminary injunction.  Id.  If, however, the moving party meets the initial threshold, the court then "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief."  Id.  In balancing the harm to each party, a court should also consider whether the preliminary injunction is in the public interest.  See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008); Judge v. Quinn, 612 F.3d 537, 546 (7th Cir. 2010).

## A.    Plaintiffs Cannot Establish a Likelihood of Success on the Merits of Their Claim.

To establish a likelihood of success on the merits, Plaintiffs must

11

demonstrate that they have "some prospect of prevailing on the merits" of their claim. Hoosier Energy Rural Electric Cooperative, Inc. v. John Hancock Life Insurance Co., 582 F.3d 721, 730 (7th Cir. 2009). While the UUW and AUUW statutes do not completely ban firearm possession, these statutes prevent Plaintiffs from carrying firearms outside of their homes or places of business except when the firearm is non-functioning, not immediately accessible, or unloaded and enclosed in a case. See 720 ILCS 5/24-1(a)(4). Plaintiffs contend they are likely to prevail on their challenge to the UUW and AUUW statutes because the Second Amendment gives them the right to carry firearms—concealed or otherwise—outside of their homes.

In determining whether Plaintiffs are likely to succeed on the merits of their claim, this Court will follow the framework for considering Second Amendment challenges that the Seventh Circuit adopted in Ezell. See Ezell, 651 F.3d at 701 (noting that the Third, Fourth, and Tenth Circuits have adopted a similar framework); see also Justice v. Town of Cicero, No. 10-C-5331, 2011 WL 5075870, at *9 (N.D. Ill. Oct. 25,

2011) (applying the framework adopted in Ezell).

First, "the threshold inquiry in some Second Amendment cases will be a 'scope' question: Is the restricted activity protected by the Second Amendment in the first place?" Ezell, 651 F.3d at 701.  If Defendants can establish that the activity regulated by the challenged law is not within the scope of the Second Amendment, then "the activity is categorically unprotected, and the law is not subject to further Second Amendment review." Id. at 702-03.

If the regulated activity is protected, then the Court will engage in a "second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." Id. at 703.  In the second inquiry, the Court must determine what level of constitutional scrutiny to apply.  "[T]he rigor of this judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." Id.[1]

---

[1] In Ezell, the court stated that its two-step approach to Second Amendment challenges did not undermine the court's earlier decisions in United States v. Skoien, 614 F.3d 638, 643 (7th Cir. 2010), or United States v. Williams, 616 F.3d 685, 691-93 (7th Cir. 2010), "both of which touched on the historical 'scope' question before applying a form of intermediate scrutiny." Ezell, 651 F.3d at 701.

Accordingly, this Court will first analyze whether the activity restricted by the UUW and AUUW statutes—carrying loaded, uncased, and immediately accessible firearms outside of one's home or place of business—is protected by the Second Amendment.

### 1. The UUW and AUUW Statutes Do Not Restrict Activity Protected by the Second Amendment.

Plaintiffs argue that the Second Amendment protects a general right to carry guns that includes a right to carry operable guns in public. However, neither the United States Supreme Court nor any United States Court of Appeals has recognized such a right.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In Heller, the Supreme Court held that the Second Amendment "protects the right to keep and bear arms for the purpose of self-defense" and that a District of Columbia law that "banned the possession of handguns in the home" violated that right. McDonald, 130 S. Ct. at 3021 (citing Heller, 554 U.S. 570). Writing for the majority in Heller, Justice Scalia extensively

14

examined the text and historical background of the Second Amendment

and found that the Second Amendment "guarantee[s] the individual

right to possess and carry weapons in case of confrontation" unconnected

with service in a militia. 554 U.S. at 592. However, the Court's

characterization of the right concluded with strong limiting language:

"Like most rights, the right secured by the Second Amendment is not

unlimited. From Blackstone through the 19th-century cases,

commentators and courts routinely explained that the right was not a

right to keep and carry any weapon whatsoever in any manner

whatsoever and for whatever purpose." Id. at 626. For example, the

Court explained, "the majority of the 19th-century courts to consider the

question held that prohibitions on carrying concealed weapons were

lawful under the Second Amendment or state analogues." Id. The

Court further explained that although it did not undertake an

"exhaustive historical analysis" of the full scope of the Second

Amendment, "nothing in our opinion should be taken to cast doubt on

longstanding prohibitions on the possession of firearms by felons and the

mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626-27 (stating that this list of "presumptively lawful regulatory measures" is not intended to be exhaustive). Finally turning to the District of Columbia law at issue in the case, the Court concluded:

> In sum, we hold that the District's ban on handgun possession *in the home* violates the Second Amendment, as does its prohibition against rendering any lawful firearm *in the home* operable for purpose of immediate self-defense. Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it *in the home*.

Heller, 554 U.S. at 635 (emphasis added).

The Supreme Court's holding in Heller is narrow: that the Second Amendment gives qualified individuals (i.e. mentally competent persons who are not felons) the right to possess lawful firearms "in the home" for purposes of self-defense. Id. at 626, 635. The Court emphasized the limited nature of its holding, stating that "whatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other

16

interests the right of law-abiding, responsible citizens to use arms *in defense of hearth and home*." Id. at 635 (emphasis added). The Seventh Circuit, in an en banc opinion, has stated that the language of Heller "warns readers not to treat Heller as containing broader holdings than the Court set out to establish: that the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense. What other entitlements the Second Amendment creates, and what regulations legislatures may establish, were left open." Skoien, 614 F.3d at 640.

In McDonald, a plurality of the Supreme Court found that the right to possess a handgun in the home for self-defense recognized in Heller was applicable to the states through the Due Process Clause of the Fourteenth Amendment. McDonald, 130 S. Ct. at 3050 ("In Heller, we held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense . . . . We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in Heller.").

17

Together, the <u>Heller</u> and <u>McDonald</u> opinions emphasize that the core of the Second Amendment right is the right of the individual to bear arms in the home for the purpose of self-defense. Neither <u>Heller</u> nor <u>McDonald</u> recognizes a Second Amendment right to bear arms outside of the home. To the contrary, the <u>Heller</u> Court specifically limited its holding to possession in the home and warned courts not to extend that holding beyond what the Court set out to establish. <u>Heller</u>, 554 U.S. at 626-27, 635; <u>see also</u> <u>Skoien</u>, 614 F.3d at 640.

The Seventh Circuit has not specifically considered the question of whether the Second Amendment right articulated in <u>Heller</u> includes a general right to bear arms outside of the home. Most recently, the court considered whether a city-wide ban on firing-range training, where such training was a prerequisite for lawful gun ownership, burdened the core of the Second Amendment right to possess firearms for self-defense in the home. <u>See</u> <u>Ezell</u>, 651 F.3d at 689-90. The court's finding that the ban burdened the core of the Second Amendment right was based on its reasoning that the ban, by effectively precluding lawful gun ownership,

severely interfered with "the right to keep and bear arms for defense of self, family, and home" articulated in Heller. Id. at 704. The court did not make a finding regarding the scope of the Second Amendment outside of the home. However, the Seventh Circuit's characterization of the scope of that right in Ezell and Skoien supports the conclusion that the Second Amendment right, as recognized by the Supreme Court, does not extend outside of the home. As noted earlier, the court in Skoien stated that the Heller decision set out a narrow holding: "that the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense." Skoien, 614 F.3d at 640.

In concluding that the Second Amendment right in Heller is limited to the right to bear arms in the home for self-defense, this Court notes that many courts in other jurisdictions have reached a similar conclusion regarding the Heller decision. See Piszczatoski v. Filko, No. 10-06110, 2012 WL 104917, at *1 (D.N.J. Jan. 12, 2012) (finding that the Second Amendment does not include a general right to carry handguns outside the home); Kachalsky v. Cacace, No. 10-cv-5413, 2011 WL 3962550, at

*19, *23 (S.D.N.Y. Sept. 2, 2011) (stating that the Heller Court's "emphasis on the Second Amendment's protection of the right to keep and bear arms for the purpose of 'self-defense in the home' permeates the Court's decision and forms the basis for its holding" and finding that both concealed and open carry of firearms in public are "outside the core Second Amendment concern articulated in Heller: self-defense in the home"); Osterweil v. Bartlett, No. 1:09-cv-825, 2011 WL 1983340, at *6 (N.D.N.Y. May 20, 2011); Gonzales v. Village of West Milwaukee, No. 09-cv-0384, 2010 WL 1904977, at *4 (E.D. Wis. May 11, 2010) ("The Supreme Court has never held that the Second Amendment protects the carrying of guns outside the home."); Moreno v. N.Y. City Police Department, No. 10-cv-6269, 2011 WL 2748652, at *3 (S.D.N.Y. May 7, 2011) (noting that "Heller has been narrowly construed, as protecting the individual right to bear arms for the specific purpose of self-defense within the home"); United States v. Tooley, 717 F. Supp. 2d 580, 596 (S.D. W. Va. 2010) ("[P]ossession of a firearm outside of the home or for purposes other than self-defense in the home are not within the 'core' of

20

the Second Amendment right as defined by Heller."); People v. Aguilar,

408 Ill. App. 3d 136, 143 (2011) ("[T]he decisions in Heller and

McDonald were limited to interpreting the [S]econd [A]mendment's

protection of the right to possess handguns in the home, not the right to

possess handguns outside the home."); People v. Dawson, 403 Ill. App.

3d 499, 508 (2010) ("[T]he Heller Court ultimately limited its holding

to the question presented—that the [S]econd [A]mendment right to bear

arms protected the right to possess a commonly used firearm, in the

home for self-defense purposes."); Williams v. State, 10 A.3d 1167, 1178

(Md. 2011) ("If the Supreme Court . . . meant its holding [in Heller and

McDonald] to extend beyond home possession, it will need to say so

more plainly."); Little v. United States, 989 A.2d 1096, 1101 (D.C.

2010) (holding that because the appellant was not in his home, he was

"outside of the bounds identified in Heller, i.e., the possession of a

firearm in one's private residence for self-defense purposes"); Mack v.

Unites States, 6 A.3d 1224, 1236 (D.C. 2010) (stating that "Heller did

not endorse a right to carry weapons outside the home.  Nor has the

21

Court done so in its more recent decision in <u>McDonald</u>."); <u>State v. Knight</u>, 218 P.3d 1177, 1189 (Kan. Ct. App. 2009) (reasoning that a statute which criminalized the possession of a concealed firearm in public was outside the province of the Second Amendment, because the Supreme Court's decision in <u>Heller</u> "turned solely on the issue of handgun possession in the home"); <u>but see</u> <u>People v. Mimes</u>, 953 N.E.2d 55, 73 (Ill. App. Ct. 2011) (finding that the Second Amendment right is not limited to the home because the "inherent right to self-defense" that is central to the <u>Heller</u> decision "does not disappear outside the home" but, nonetheless, holding that the challenged Illinois AUUW statute survives intermediate scrutiny and does not violate the Second Amendment).

In addition to emphasizing that the core of the Second Amendment right is the right to bear arms in the home for the purpose of self-defense, the Supreme Court in <u>Heller</u> clearly affirmed the government's power to regulate and restrict possession of firearms outside of the home. <u>Heller</u>, 554 U.S. at 626-27 (approving of 19th-century prohibitions on carrying

22

concealed weapons and stating that "nothing in our opinion should be taken to cast doubt . . . on laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions on the qualifications on the commercial sale of arms").  The <u>Heller</u> Court's approval of 19th-century bans on concealed carry and other longstanding firearm regulations further indicates that <u>Heller</u> recognizes a Second Amendment right to bear arms that is specific to possession in the home for self-defense and does not extend to possession outside of the home.  <u>See</u> <u>id.</u>

The Seventh Circuit and other courts have applied the <u>Heller</u> Court's language to uphold various federal gun laws, including bans on gun possession by certain types of criminal offenders and bans on possession of certain types of weapons.  <u>See</u> <u>Skoien</u>, 614 F.3d at 639 (upholding 18 U.S.C. § 922(g)(9), which bans possession of firearms by a person convicted of a misdemeanor crime of domestic violence); <u>United States v. Yancey</u>, 621 F.3d 681, 682 (7th Cir. 2010) (upholding 18 U.S.C. § 922(g)(3), which bans possession of firearms by certain users of

unlawful controlled substances); <u>United States v. Williams</u>, 616 F.3d 685, 692-93 (7th Cir. 2010) (upholding 18 U.S.C. § 922(g)(1), which bans possession of firearms by a convicted felon); <u>see also</u> <u>United States v. Booker</u>, 644 F.3d 12, 13 (1st Cir. 2011) (upholding 18 U.S.C. § 922(g)(9)); <u>United States v. Chester</u>, 628 F.3d 673, 680 (4th Cir. 2010) (same); <u>United States v. Reese</u>, 627 F.3d 792, 800-01 (10th Cir. 2010) (upholding 18 U.S.C. § 922(g)(8), which bans possession of firearms by individuals subject to a domestic protection order); <u>United States v. Mazzarella</u>, 614 F.3d 85, 89 (3d Cir. 2010) (upholding 18 U.S.C. § 922(k), which bans possession of firearms with an obliterated serial number).

Relying on the <u>Heller</u> Court's implicit approval of 19th-century laws prohibiting concealed carry of weapons (<u>see</u> <u>Heller</u>, 554 U.S. at 626), many courts have held that laws restricting or banning concealed carry of weapons outside of the home do not encroach upon activity protected by the Second Amendment. <u>See</u> <u>Kachalsky</u>, 2011 WL 3962550, at *23 (upholding New York Penal Law § 400.00(2)(f), which allows concealed

24

carry permits to be issued only "when proper cause exists" and finding

that both concealed and open carry of firearms in public are "outside the

core Second Amendment concern articulated in <u>Heller</u>: self-defense in the

home"); <u>United States v. Hart</u>, 726 F. Supp. 2d 56, 60 (D. Mass. 2011)

("<u>Heller</u> does not hold, nor even suggest, that concealed weapons laws are

unconstitutional."); <u>Richards v. County of Yolo</u>, No. 2:09-cv-01235,

2011 WL 1885641, at *3 (E.D. Cal. May 16, 2011) (upholding a county

ban on concealed carry because "the Second Amendment does not create

a fundamental right to carry a concealed weapon in public"); <u>Dorr v.

Weber</u>, 741 F. Supp. 2d 993, 1005 (N.D. Iowa 2010) (finding that "a

right to carry a concealed weapon under the Second Amendment has not

been recognized to date"); <u>Mack</u>, 6 A.3d at 1236 (stating that "<u>Heller</u> did

not endorse a right to carry weapons outside the home" and "did not

recognize a right to carry concealed weapons"); <u>Knight</u>, 218 P.3d at

1190 (concluding that the <u>Heller</u> Court considered concealed firearms

prohibitions to be "presumptively constitutional").

Moreover, in <u>Kachalsky v. Cacace</u>, the Southern District of New

25

York upheld New York's handgun licensing scheme, which allows

issuance of a license to carry a handgun in public only after a licensing

officer's discretionary determination that "proper cause exists for the

issuance thereof," which New York state courts have interpreted to mean

"a special need for self-protection distinguishable from that of the general

community or of persons engaged in the same profession." Kachalsky,

2011 WL 3962550, at *1 (quoting N.Y.P.L. § 400.00(2)(f)).  The court

held that the Second Amendment right defined in Heller does not extend

to invalidate regulations such as N.Y.P.L. Section 400.00(2)(f).

Kachalsky, 2011 WL 3962550, at *20.  The court explained that "the

language of Heller makes clear that the Court recognized 'not a right to

keep and carry any weapon whatsoever in any manner whatsoever and

for whatever purpose,' 554 U.S. at 626, but rather a much narrower

right—namely the 'right of law-abiding, responsible citizens to use arms

in defense of hearth and home,' id. at 635." Kachalsky, 2011 WL

3962550, at *20.  The court further stated that "Heller's limiting

language makes clear that the Supreme Court did not disturb its prior

26

ruling in <u>Robertson v. Baldwin</u>, 165 U.S. 275, 17 S. Ct. 326, 41 L. Ed.
715 (1897), where it 'recognized that the Second Amendment right to
keep and bear arms is not infringed by laws prohibiting the carrying of
concealed weapons.'" <u>Kachalsky</u>, 2011 WL 3962550, at *20 (quoting
<u>Dorr</u>, 741 F. Supp. 2d at 1005). Because New York's law did not
interfere with the right of individuals to bear arms in the home for the
purpose of self-defense, the court found that the law did not impose a
burden on conduct falling within the scope of the Second Amendment
and rejected the plaintiffs' challenge under the first prong of the
two-prong Second Amendment analysis. <u>Kachalsky</u>, 2011 WL 3962550,
at *23.

Additionally, the District of New Jersey recently heard a similar
constitutional challenge to a New Jersey law governing issuance of
permits to carry handguns outside of one's home or place of business.
<u>See</u> <u>Piszczatoski</u>, 2012 WL 104917, at *1. The New Jersey law requires
a permit applicant to demonstrate, among other things, a "justifiable
need to carry a handgun," first to a police officer and then to a Superior

Court judge.  Piszczatoski, 2012 WL 104917, at *3.  The plaintiffs

argued that the law encroaches upon a fundamental right to carry

operable handguns for self-defense under the Second Amendment.  Id.

The court upheld the law, finding that "[t]he Handgun Permit Law does

not on its face burden protected conduct because the Second

Amendment does not include a general right to carry handguns outside

the home."  Piszczatoski, 2012 WL 104917, at *1.  The court reasoned

that Heller "repeatedly and specifically limited itself to the home," and

much of its reasoning "refers to the need for self-defense specifically in

the home."  Piszczatoski, 2012 WL 104917, at *7.  The court concluded:

"If the Supreme Court majority had intended to create a broader general

right to carry for self-defense outside the home, Heller would have done

so explicitly."  Id.

        This Court agrees with the Piszczatoski court's conclusion that the

Supreme Court in Heller and McDonald did not explicitly recognize a

general right to carry firearms in public.  The Heller Court's emphasis on

the right to bear arms "in defense of hearth and home" and the Court's

28

express approval of regulations prohibiting concealed carry of weapons in

public reflect that the Court in <u>Heller</u> did not recognize a Second

Amendment right to possess operable firearms in public.  <u>Heller</u>, 554

U.S. at 635 (stating that "whatever else [the Second Amendment] leaves

to future evaluation, it surely elevates above all other interests the right

of law-abiding, responsible citizens to use arms in defense of hearth and

home.").  Because the Supreme Court has not recognized such a right,

the Illinois UUW and AUUW statutes' prohibition of carrying loaded,

uncased, and immediately accessible firearms in public does not violate

the Second Amendment as defined by the Supreme Court.  The UUW

and AUUW statutes, because they permit home possession, do not

interfere with the core of the Second Amendment right, which is "the

right of law-abiding, responsible citizens to use arms in defense of hearth

and home."  <u>Heller</u>, 554 U.S. at 635.

Because Illinois' UUW and AUUW statutes do not interfere with

possession of arms in the home, these statutes are distinguishable from

the regulation challenged in <u>Ezell</u>.  In <u>Ezell</u>, the Seventh Circuit enjoined

the City of Chicago from enforcing a ban on live ammunition firing ranges within the City where the City also mandated firing-range training as a prerequisite to lawful gun ownership.  Ezell, 651 F.3d at 689-90. The Ezell court found that because Heller and McDonald established that the right to possess firearms for self-defense in one's home is a core Second Amendment right, there is implicitly "a corresponding right to acquire and maintain proficiency in [firearm] use."  See Ezell, 651 F.3d at 704.  Because the range ban severely encroached on "an important corollary to the meaningful exercise of the core right to possess firearms for self-defense," the court applied a heightened scrutiny analysis and concluded that the plaintiffs' Second Amendment claim had a strong likelihood of success on the merits.  See Ezell, 651 F.3d at 708-10.

The ordinance challenged in Ezell implicated the core of the Second Amendment right to possess firearms in the home for self-defense in a way that the Illinois UUW and AUUW statutes do not.  The ordinance in Ezell prohibited citizens from satisfying a prerequisite to lawful gun ownership and, thereby, severely encroached upon the right to possess

guns for purposes of self-defense in the home guaranteed by <u>Heller</u>.  <u>See</u>

<u>Ezell</u>, 651 F.3d at 708.  By contrast, the instant UUW and AUUW

statutes do not limit possession of weapons for the purpose of self-

defense in the home and only restrict possession outside of the home

under limited circumstances.  <u>See</u> 720 ILCS 5/24-1(a)(4), (10); 720 ILCS

5/24-1.6(a).  Additionally, unlike the ordinance at issue in <u>Ezell</u>, neither

the UUW statute nor the AUUW statute burdens anything that could be

considered a necessary corollary to that right because the statutes do not,

for example, prevent qualified individuals from purchasing a firearm,

obtaining proficiency in firearm use, or transporting a firearm.  <u>See</u> <u>Ezell</u>,

651 F.3d at 708-10.  Therefore, the UUW and AUUW statutes do not

infringe upon the core Second Amendment right recognized by the

Supreme Court in <u>Heller</u>.  <u>See</u> <u>Heller</u>, 554 U.S. at 635.

This Court finds further support for its conclusion in recent

decisions of the Illinois Appellate Court, which has also concluded that

<u>Heller</u> and <u>McDonald</u> affirm a Second Amendment right to bear arms in

the home but not outside of the home.  <u>See</u> <u>People v. Williams</u>, No. 1-

31

09-1667, 2011 WL 6351861, at *4 (Ill. App. Ct. Dec. 15, 2011) (finding

that the AUUW statute "does not implicate the fundamental right

announced by <u>Heller</u> and . . . <u>McDonald</u>, the right to possess a loaded

handgun in the home for self-protection"); <u>Aguilar</u>, 408 Ill. App. 3d at

143; <u>Dawson</u>, 403 Ill. App. 3d at 508; <u>but see</u> <u>Mimes</u>, 953 N.E.2d at 73

(finding that the Second Amendment right as defined by <u>Heller</u> and

<u>McDonald</u> is not limited to the home but ultimately holding that the

AUUW statute's ban on the carrying of an uncased, loaded, and

accessible firearm in public nevertheless passed constitutional scrutiny).

The Illinois Appellate Court has held repeatedly that the Illinois UUW

and AUUW statutes do not violate the Second Amendment.  <u>See</u>

<u>Williams</u>, 2011 WL 6351861, at *2 (holding that the AUUW statute did

not violate the defendant's Second Amendment rights); <u>People v.</u>

<u>Montyce H.</u>, No. 1-10-1788, 2011 WL 5903448, at *5 (Ill. App. Ct.

Nov. 18, 2011) (same); <u>Mimes</u>, 953 N.E.2d at 77 (same); <u>People v. Ross</u>,

407 Ill. App. 3d 931, 939-40 (2011) (same); <u>Aguilar</u>, 408 Ill. App. 3d at

142-50 (same); <u>Dawson</u>, 403 Ill. App. 3d at 510 (holding that U.S.

32

Supreme Court cases "do not define the fundamental right to bear arms

to include activity barred by the AUUW statute").

    This Court concludes that the Illinois UUW and AUUW statutes

do not infringe upon a core right protected by the Second Amendment.

Further, the Supreme Court has not recognized a right to bear firearms

outside the home and has cautioned courts not to expand on its limited

holding.  See Heller, 554 U.S. at 635 (holding only that a ban that

prohibits competent individuals from possessing operable handguns for

self-defense in their homes violated the Second Amendment).  Rather,

the Supreme Court has validated the government's prerogative to

implement firearm prohibitions.  See id. at 626-27 (stating that "nothing

in our opinion should be taken to cast doubt . . . on laws forbidding the

carrying of firearms in sensitive places such as schools and government

buildings, or laws imposing conditions on the qualifications on the

commercial sale of arms").  Firearm regulation is the prerogative of

legislatures, subject only to constitutional dictates judged by the courts.

The absence of any controlling authority which finds that the UUW or

AUUW statutes violate the Second Amendment prevents Plaintiffs from showing any likelihood of success on the merits.

### 2. The UUW and AUUW Statutes Survive Constitutional Scrutiny.

Alternatively, assuming, *arguendo*, that there is a right to bear arms outside of the home, such a right is not a core Second Amendment right as defined by the <u>Heller</u> Court, which defined the core of the right as the right to bear arms in the home for self-defense. <u>See</u> <u>Heller</u>, 554 U.S. at 635; <u>see also</u> <u>Skoien</u>, 614 F.3d at 640. However, even if this Court were to assume that such a right exists and that the UUW and AUUW statutes interfere with that right, Plaintiffs would still be unable to show a likelihood of success on the merits of their claim because the UUW and AUUW statutes survive constitutional scrutiny.

This Court notes that the Supreme Court has not articulated the appropriate level of scrutiny that courts must apply to Second Amendment challenges, but the Supreme Court has indicated that rational basis review is not appropriate. <u>See</u> <u>Heller</u>, 554 U.S. at 629 n. 27 ("Obviously, [a rational basis] test could not be used to evaluate the

34

extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms.").  As discussed earlier, the Seventh Circuit has stated that the level of scrutiny to be applied "will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." Ezell, 651 F.3d at 703, 708.  The court explained that "laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified" than those placing a "severe burden" on the right. Ezell, 651 F.3d at 708.

The Seventh Circuit's approach explains why the court applied heightened, but "not quite strict," scrutiny in the Ezell decision but applied only intermediate scrutiny in the Skoien decision.  In Skoien, an en banc decision, an individual asserted that 18 U.S.C. § 922(g)(9) violated his Second Amendment right to bear arms because it barred him from possessing a weapon on account of his conviction for misdemeanor domestic violence.  Skoien, 614 F.3d at 639.  The court applied

35

intermediate scrutiny and upheld the law, finding that the goal of the law, "preventing armed mayhem," was an important governmental objective and the government had established a substantial relation between the statute and its objective. Skoien, 614 F.3d at 641-42. In Ezell, the Seventh Circuit enjoined the City of Chicago from enforcing a ban on live ammunition firing ranges within the City where the City also mandated firing-range training as a prerequisite to lawful gun ownership. Ezell, 651 F.3d at 689-90. Because the range ban severely encroached on "an important corollary to the meaningful exercise of the core right to possess firearms for self-defense," the court found that the City's ban was subject to a heightened scrutiny analysis—one that was "more rigorous" than the intermediate scrutiny applied in Skoien but was "not quite" strict scrutiny. See Id. at 708. The Ezell court emphasized that heightened scrutiny was appropriate because the plaintiffs' claim, unlike the claim in Skoien, was brought by a "law-abiding, responsible citizen" and involved "the central self-defense component of the right" as described in Heller, 554 U.S. at 635. Ezell 651 F.3d at 708.

However, the heightened scrutiny analysis applied in the <u>Ezell</u> case
is not the appropriate standard to apply in this case because the Illinois
UUW and AUUW statutes, which do not prohibit home possession, do
not come as close to the core of the Second Amendment right as the law
challenged in <u>Ezell</u>.  In <u>Ezell</u>, the range ban infringed upon the core of the
right because it prohibited citizens from satisfying a prerequisite to lawful
gun ownership—thereby preventing citizens from lawfully possessing
guns in the home for self-defense.  <u>See Ezell</u>, 651 F.3d at 708.  By
contrast, the UUW and AUUW statutes do not restrict possession of
weapons for the purpose of self-defense in the home and only restrict
possession outside of the home under limited circumstances.  <u>See</u> 720
ILCS 5/24-1(a)(4), (10); 720 ILCS 5/24-1.6(a).  Additionally, unlike the
ordinance at issue in <u>Ezell</u>, neither the UUW statute nor the AUUW
statute burdens a necessary corollary to that right because the statutes do
not, for example, prevent qualified individuals from purchasing a firearm,
transporting a firearm, or obtaining proficiency in firearm use.  <u>See Ezell</u>,
651 F.3d at 708-10 (finding that a city ordinance that banned firing

ranges while simultaneously requiring firing-range training as a prerequisite to lawful firearm possession burdened a "necessary corollary" to the right to bear arms in the home for self-defense).  Accordingly, the UUW and AUUW statutes are not subject to the heightened level of scrutiny applied in Ezell.  See Ezell, 651 F.3d at 703.

Because neither the heightened scrutiny applied in Ezell nor rational basis review is the appropriate standard, this Court will apply intermediate scrutiny in this case.  This Court notes that a majority of courts considering Second Amendment challenges since the Heller decision have applied intermediate scrutiny.  See Skoien, 614 F.3d at 641-42 (applying intermediate scrutiny to 18 U.S.C. § 922(g)(9), which bars possession of a weapon by individuals convicted of misdemeanor domestic violence); see also Mazzarella, 614 F.3d at 89 (applying intermediate scrutiny to a law prohibiting possession of handguns with obliterated serial numbers); Chester, 628 F.3d at 680 (applying intermediate scrutiny to 18 U.S.C. § 922(g)); Reese, 627 F.3d at 800-01 (same).

In applying intermediate scrutiny, this Court will consider: (1) whether the contested law serves an important governmental objective; and (2) whether the statute is substantially related to that governmental objective. See Skoien, 614 F.3d at 641. In determining whether such a substantial relationship exists, this Court may consider both logic and data. See id. at 642 (finding that "both logic and data establish[ed] a substantial relationship" between the statute and the governmental objective at issue).

Illinois' UUW statute prohibits individuals from bearing firearms outside of one's home, legal dwelling, or place of business, except under certain circumstances. See 720 ILCS 5/24-1(a)(4). The statute provides, among other things, that individuals with valid Firearm Owner's Identification ("FOID") cards may lawfully possess firearms in public so long as the firearm is broken down in a non-functioning state, not immediately accessible, or unloaded and enclosed in a case. See 720 ILCS 5/24-1(a)(4)(iii). The AUUW statute makes it a felony to possess a firearm outside of one's home, legal dwelling, or place of business when

39

one of the following factors is present: "(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or (B) the firearm possessed was uncased, unloaded and the ammunition for the weapon was immediately accessible at the time of the offense . . . ." 720 ILCS 5/24-1.6(a)(3)(A), (B).

Defendants' asserted basis for enacting the UUW and AUUW statutes is public safety. See Defs.' Resp. to Pls.' Mot. (d/e 26) at 13. In Skoien, the Seventh Circuit recognized that public safety is a valid governmental interest. Skoien, 614 F.3d at 641-42. The court specifically stated that "no one doubts that the goal of § 922(g), preventing armed mayhem, is an important governmental objective." Id. at 642. As such, the first factor in the intermediate scrutiny test—whether the challenged law serves an important governmental objective—is satisfied for both the UUW and AUUW statutes.

The second factor—whether the statute is substantially related to an important governmental interest—must also be satisfied. Defendants assert that the UUW and AUUW statutes are substantially related to the

government's interest in public safety because the statutes make it "more difficult to discharge firearms in public, thereby reducing the risk that guns will fire to deadly effect, either purposefully or accidentally." See Defs.' Resp. to Pls.' Mot. at 13. Defendants also argue that empirical evidence supports their assertion that the UUW and AUUW statutes are related to public safety goals, citing preliminary studies that indicate that the passage of "right to carry" laws in other states corresponds with a measurable increase in crime. See id. (citing John J. Donohue, Guns, Crime and the Impact of State Right to Carry Laws, 73 Fordham L. Rev. 623, 630-39 (2004); Concealed Carry Killers, Violence Policy Center (2009), http://www.vpc.org/ccwkillers.htm).

This Court need not decide whether a ban on the possession of loaded, uncased, and accessible firearms in public truly reduces the risk of gun violence in public. This Court need only determine whether there is a substantial relationship between the UUW and AUUW statutes and the statutes' intended effect of ensuring public safety. Under intermediate scrutiny, the fit between the challenged law and the law's

41

objective must be "reasonable, not perfect." <u>Reese</u>, 627 F.3d 792, 801

(quoting <u>Marzzarella</u>, 614 F.3d at 98); <u>see also</u> <u>Mimes</u>, 953 N.E.2d at

76.

 This Court finds that Defendant's assertions and supporting

evidence are sufficient to establish a substantial relationship between the

means employed by the UUW and AUUW statutes and the

government's asserted interest in public safety.  One may reasonably

conclude that prohibiting the possession of loaded, uncased, and

immediately accessible firearms in public will make it more difficult for

individuals to discharge firearms in public and will thereby diminish the

public's risk of injuries and death by gunfire.  <u>See</u> <u>Skoien</u>, 614 F.3d at

641-42 (stating that courts may look to logic in order to find a

substantial relationship between a regulation and its objective); <u>see also</u>

<u>Montyce H.</u>, 2011 WL 5903448, at *6-7 (citing <u>Mimes</u>, 953 N.E.2d at

76-77 (applying intermediate scrutiny and finding that the fit between

the challenged provisions of the AUUW statute and the government's

important interest in public safety is "absolutely reasonable" in part

42

because the statute's prohibition of carrying loaded and accessible firearms in public "is justified by the potential deadly consequences to innocent members of the general public when someone carrying a loaded and accessible gun is either mistaken about his need for self-defense or just a poor shot")). Empirical evidence supports this conclusion. See Defs.' Resp to Pls.' Mot. at 13 (citing Donahue, at 630-39; Violence Policy Center, supra). Because there is a substantial relationship between Illinois' public safety objective and the statutes at issue, this Court finds the UUW and AUUW statutes are constitutional under an intermediate scrutiny analysis. See Skoien, 614 F.3d at 641. Plaintiffs cannot, therefore, show any prospects of prevailing on the merits of their challenge to the UUW and AUUW statutes, and their preliminary injunction motion must be denied. See Girl Scouts of Manitou Council, Inc., 549 F.3d at 1086 ("If the court determines that the moving party has failed to demonstrate any one of [the] three threshold requirements, it must deny the [preliminary] injunction.").

### B. Inadequacy of a Legal Remedy, Irreparable Harm, and Balancing of Harms

Because this Court has determined that Plaintiffs have failed to demonstrate a likelihood of success on the merits, this Court may deny the injunction without analyzing the remaining preliminary injunction factors. See Girl Scouts of Manitou Council, Inc., 549 F.3d at 1086. Nevertheless, this Court will briefly address the remaining threshold factors—inadequacy of a legal remedy and irreparable harm. See id. Rather than analyze inadequacy of a legal remedy and irreparable harm as separate factors, courts may consider the two factors jointly. See Ezell, 651 F.3d at 697. This Court will do so and then briefly discuss the balancing of harms factor.

The Second Amendment's central component is the right to possess firearms for self-defense in the home, and infringements of this right cannot be compensated by money damages. Ezell, 651 F.3d at 699 (citing Heller, 554 U.S. at 592–95). As such, harm resulting from a Second Amendment violation is "properly regarded as irreparable and having no adequate remedy at law." Ezell, 651 F.3d at 699.

44

Had Plaintiffs been able to prove a violation of their Second Amendment right to bear arms, Plaintiffs would have necessarily been able to establish irreparable harm and a lack of adequate legal remedy. However, Plaintiffs' inability to prove a Second Amendment violation prevents them from establishing these elements.

Furthermore, the State undoubtedly has the authority to regulate firearms in order to ensure public safety.  See Heller, 554 U.S. at 626-27. Striking down the UUW and AUUW statutes would jeopardize Illinois' public safety objectives.  By contrast, continued enforcement of the statutes poses no harm to Plaintiffs, as the statutes do not violate Plaintiffs' Second Amendment rights.  The public's significant interest in general safety outweighs Plaintiffs' interest in carrying firearms outside of the home for Plaintiffs' own safety.  To the extent it is necessary to analyze factors aside from the likelihood of success on the merits, the Court finds the foregoing preliminary injunction factors militate against issuing injunctive relief.

# V.  MOTION TO DISMISS

A motion to dismiss is subject to review under the standard set forth in Federal Rule of Civil Procedure 12(b)(6).  When reviewing a motion to dismiss, a court looks at the sufficiency of the complaint and not whether the plaintiff has a winning claim.  See McCormick v. City of Chicago, 230 F.3d 319, 323-26 (7th Cir. 2000).  Still, a complaint must do more than merely "avoid foreclosing possible bases for relief." Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008) (internal quotation marks omitted).  A complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level."  Id. (internal quotation marks omitted).  "Rule 12(b)(6) should be employed only when the complaint does not present a legal claim."  Smith v. Cash Store Management, Inc., 195 F.3d 325, 327 (7th Cir. 1999) (internal quotation marks omitted).

Plaintiffs' Amended Complaint contains a single cause of action.  It alleges that the UUW and AUUW statutes violate Plaintiffs' Second Amendment right to carry firearms, concealed or otherwise, outside their

homes.  <u>See</u> Am. Compl. at 10.  Because this Court has determined that

individuals do not have a Second Amendment right to bear arms outside

of the home, this Court finds that the UUW and the AUUW

statutes—which only regulate firearm possession outside of the home—do

not infringe on Plaintiffs' Second Amendment rights.  <u>See</u> <u>Heller</u>, 554

U.S. at 635 (holding only that the Second Amendment affords

individuals a right to bear arms "in the home" and explaining that the

Second Amendment "elevates above all other interests the right of . . .

citizens to use arms in defense of hearth and home").  Therefore,

Plaintiffs' Amended Complaint does not present a viable Second

Amendment claim.

Alternatively, as discussed earlier in this Opinion, even if this Court

were to assume that there is a Second Amendment right to bear arms

outside of the home and the challenged statutes interfere with that right,

the statutes survive constitutional scrutiny.  Consequently, Plaintiffs'

Second Amendment challenge to the UUW and AUUW statutes is not

sufficient to state a claim.  <u>See</u> Fed. R. Civ. P. 12(b)(6).  Plaintiffs' claim

must be dismissed.  See Tamayo, 526 F.3d at 1084.

## VI.  CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Preliminary

and/or Permanent Injunction (d/e 13) is DENIED and Defendants'

Motion to Dismiss (d/e 24) is GRANTED.  This case is CLOSED.

IT IS SO ORDERED.

ENTERED: February 3, 2012

FOR THE COURT:                    s/ Sue E. Myerscough
                                  SUE E. MYERSCOUGH
                                  UNITED STATES DISTRICT JUDGE