IN THE
UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS,
EAST ST. LOUIS DIVISION

| | |
|---|---|
| MARY SHEPARD, and ILLINOIS STATE RIFLE ASSOCIATION, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 11 C 405-WDS-PMF |
| LISA MADIGAN, Attorney General of the State of Illinois, PATRICK J. QUINN, Governor, TYLER EDMONDS, Union County State's Attorney, DAVID LIVESAY, Union County Sheriff, ) ) ) ) ) ) ) | The Honorable William D. Stiehl, |
| Defendants. ) | Judge Presiding. |

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS AS MOOT**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the state defendants moved to dismiss this case for lack of subject matter jurisdiction because the complaint no longer presents a live case or controversy. Doc. 73. Plaintiffs requested an immediate injunction barring enforcement of "the challenged laws" against the plaintiffs. Doc. 75. This Court asked for additional briefing on two questions: (1) whether the Court retains subject matter jurisdiction in light of the passage of the Firearm Concealed Carry Act, Pub. Act 98-0063 ("FCCA" or "the Act"), and (2) whether any challenges to the Act must be brought in a new suit. Doc. 81. First, this Court does not retain jurisdiction to issue an injunction against enforcement of the previous blanket prohibition on plaintiffs carrying loaded

firearms in public because the challenged versions of those laws no longer exist, and plaintiffs' new arguments — which address the time required for them to obtain public-carry permits — focus exclusively on provisions of the new Act.[1] Second, any challenges to the new statutory scheme must be brought in a new complaint (either in the form of a new lawsuit or an amended complaint).

I. **Plaintiffs' Second Amendment Challenge To The Pre-Amendment Versions Of Three Subsections Of The Illinois Criminal Code Became Moot When The General Assembly Enacted The Firearm Concealed Carry Act.**

"[F]ederal courts may not give opinions upon moot questions or abstract propositions." *Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 729 (7th Cir. 2006). And "[a]ny dispute over the constitutionality of a statute becomes moot if a new statute is enacted in its place during the pendency of the litigation, and the plaintiff seeks only prospective relief." *Zessar v. Keith*, 536 F.3d 788, 793 (7th Cir. 2008); *see also Rembert v. Sheahan*, 62 F.3d 937, 940 (7th Cir. 1995). So long as the law has been "sufficiently altered so as to present a substantially different controversy from the one the District Court originally decided," there is "no basis for concluding that the challenged conduct [is] being repeated." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 n.3 (1993).

---

[1] In response to an identical motion to dismiss, the plaintiffs in *Moore v. Madigan*, No. 11 C 3134 (C.D. Ill.), responded only by addressing attorneys' fees, effectively conceding that the new Act mooted the merits of their original complaint. *See id.* Doc. 53.

The Supreme Court's decision in *United States Department of Treasury, Bureau of Alcohol, Tobacco, & Firearms v. Galioto*, 477 U.S. 556 (1986), is instructive. In that case, the Supreme Court held that a constitutional challenge by a former psychiatric patient to a federal law precluding former psychiatric patients from obtaining a firearm was rendered moot by a federal law enacted while the case was on appeal that created an administrative mechanism for such former patients to challenge those restrictions. *Id.* at 559. The Court explained that because Congress did away with the *per se* ban the plaintiff had challenged in his complaint and replaced it with a mechanism that would potentially allow him to obtain a firearm, the plaintiff's constitutional arguments were no longer live. *Id.*

Similarly, in *Miller v. Benson*, the Seventh Circuit dismissed as moot a constitutional challenge to a public school voucher program that excluded religious schools because, during the appeal, the legislature amended the program to make religious schools eligible. 68 F.3d 163, 164 (7th Cir. 1995) (per curiam). The court observed that the amendment gave the plaintiffs "exactly what they sought in this litigation," for they were no longer "under the same burden that led to the suit." *Id.* Thus, the case was moot. *Id.*

This case is no different than *Galioto* and *Miller*. Plaintiffs sought to have the "blanket prohibition on carrying [a] gun in public" imposed by the pre-amendment versions of 720 ILCS 5/24-1(a)(4) & (10) (2010) and 720 ILCS 5/24-1.6 (2010) declared unconstitutional and enjoined. *Moore v. Madigan*, 702 F.3d 933,

940 (7th Cir. 2012). And the FCCA amends the criminal code to eliminate that blanket prohibition by creating a procedure for obtaining a license to carry a concealed firearm in public. Pub. Act 98-063 § 10. It adds subsection (a-5) to 720 ILCS 5/24-2 (2010), which stipulates that 720 ILCS 5/24-1(a)(4) & (10) (2010) — the very subsections that plaintiffs challenged in their complaint — "do not apply to or affect any person carrying a concealed pistol, revolver, or handgun" so long as "the person has been issued a currently valid license under the [FCCA] at the time of the commission of the offense." Pub. Act 98-063 § 155. And it also adds subsections (a-5) and (b-5) to 720 ILCS 5/24-1.6(3), both of which likewise create exceptions to the criminal public-carry prohibition for those who have "been issued a currently valid license under the [FCCA]." Pub. Act. 98-063 § 155.

Because all these provisions became effective upon passage of the FCCA, *see id*. at § 999, plaintiffs' challenge to the ban is now moot. The fact that the new law affords state administrators a maximum of up to 180 days to put in place an administrative procedure for reviewing license applications does not alter that fact, even if from a practical standpoint it prevents plaintiffs from becoming licensed during that implementation period. *See id*. at § 10. Any quarrel plaintiffs have with that aspect of the new regime contests the new law. And the same holds for any challenge to the 90-day maximum period the FCCA allows for state administrators to review concealed-carry permit applications. *Id*.

Because the blanket prohibition plaintiffs challenged in their complaint no longer exists, they are no longer "under the same burden that led to the suit."

*Miller*, 68 F.3d at 164 (concerns about future events surrounding amended law insufficient to overcome mootness); *see also Am. Bar Assoc. v. Fed. Trade Comm'n*, 636 F.3d 641, 646-47 (D.C. Cir. 2011) (legislation "clearly aimed at the precise matter in dispute" moots challenge to former law, even where administrative rulemaking might raise legal concerns similar to those that inspired original suit). That makes this case moot.

Plaintiffs' analogy to "a further stay of the appellate court's mandate" is thus a poor one. Doc. 74 at 3. This is no continuation of prior law. These provisions are part of a new, comprehensive statutory scheme that replaces the blanket prohibition on carrying a firearm in public with "a new gun law that . . . impose(s) reasonable limitations, consistent with the public safety and the Second Amendment," precisely as the Seventh Circuit prescribed. *Moore*, 702 F.3d at 942. Indeed, if this Court were to accept plaintiffs' invitation to enjoin the now-superceded provisions they challenged in their amended complaint, then the Court would be issuing an advisory opinion that the now-replaced law was unconstitutional even though the General Assembly has accepted the Seventh Circuit's invitation to enact a new law — an opinion that would be squarely at odds with the very purpose of that Court withholding its mandate for 180 days.

To avoid mootness, plaintiffs would have to recast their existing complaint as a challenge, not to a blanket prohibition on carrying a handgun in public for self-defense, but to any regulation of public firearm possession whatsoever. Of course, decisions of the Seventh Circuit and the Supreme Court's decision in *Heller* would

preclude such a claim. *See Moore*, 702 F.3d at 942 (delaying issuance of mandate "to allow the Illinois legislature to craft a new gun law that will impose reasonable limitations"); *Ezell v. City of Chicago*, 651 F.3d 684, 741 (7th Cir. 2011) (legislature may impose reasonable "time, place and manner restrictions" on Second Amendment rights); *see also Dist. of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008) ("Like most rights, the right secured by the Second Amendment is not unlimited."). Unless plaintiffs take this extreme view (and their complaint does not), a challenge now to the specific contours of the new regime has no place in an action premised upon the unconstitutionality of a prior regime. *See Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 350 (D.C. Cir. 1997) (constitutional challenge to campaign contribution limits mooted by statute that increased limits where complaint did not allege that all contribution limits are unconstitutional); *see also Massachusetts v. Oakes*, 491 U.S. 576, 582-83 (1989) (statutory amendment to child pornography statute mooted by amendment adding new intent element to challenged offense).

Plaintiffs apparently agree that the FCCA at least facially moots their claims. Their argument in support of this Court's continuing jurisdiction relies entirely upon an *exception* to the mootness doctrine, voluntary cessation, which allows a federal court to maintain jurisdiction even if a defendant's act would otherwise moot a controversy. Doc. 74; *see also Knox v. Serv. Employees Intern. Union, Local 1000*, 132 S.Ct. 2277, 2287 (2012); *Bell v. City of Boise*, 709 F.3d 890,

898-99 (9th Cir. 2013). But plaintiffs' reliance on the voluntary cessation exception is misplaced because that exception to mootness, in the context of legislative change, "is generally limited to the circumstance . . . in which a defendant openly announces its intention to reenact 'precisely the same provision' held unconstitutional." *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir. 2000) (quoting *City of Mesquite v. Alladin's Castle, Inc.*, 455 U.S. 283, 289 (1982)); *accord Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004); *Christian Coalition of Ala. v. Cole*, 355 F.3d 1288, 1292 (11th Cir. 2004); *Camfield v. City of Okla. City*, 248 F.3d 1214, 1223-24 (10th Cir. 2001); *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994). And that does not exist here. Plaintiffs have not identified any evidence suggesting that the FCCA lacks "genuineness." *Zessar*, 536 F.3d at 793; *see also Nat'l Advertising Co. v. City of Miami*, 402 F.3d 1329, 1334 (11th Cir. 2005) (as applied to government, voluntary cessation exception focuses not on motivation for amendment, but on whether prior, challenged version of law is likely to be reenacted). To the contrary, because the Illinois General Assembly enacted the FCCA with overwhelming majorities in both chambers and then overrode the Governor's veto,[2] there is no basis for concluding that re-enactment of the former ban is possible, much less probable. And absent specific evidence to that effect, the law requires this Court to presume defendants will not reenact a statute already held unconstitutional. *See Wisc. Right to Life,*

---

[2] *See* Bill Status of HB0183, July 2, 2013, *available at* http://www.ilga.gov/legislation/billstatus.asp (last visited July 18, 2013).

*Inc. v. Schober*, 366 F.3d 485, 492 (7th Cir. 2004); *see also Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328-29 (11th Cir. 2005) (noting that "governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities").

Nor is there any merit to plaintiffs' suggestion that the "effects of the alleged violation" still exist. Doc. 74 at 3-4. The blanket prohibition on carrying a loaded firearm in public — the sole focus of plaintiffs' complaint — no longer exists. Instead, Illinois has adopted a system that requires a permit to carry a loaded firearm in public, and that new statutory scheme is now in place. *See* Pub. Act 98-063 § 999. Whether any part of the new regime, which includes the up-to-180-day period to establish an administrative procedure for processing license applications and up-to-90-day period for reviewing an application, violates the Second Amendment presents a separate question. Because plaintiffs are no longer subject to the categorical bar they challenged in their complaint, their claims are moot.

## II. If Plaintiffs Wish To Challenge The New Statutory Scheme, They Must Do So In A New Complaint.

As discussed, plaintiffs' new arguments challenge provisions of the new Act. The Supreme Court has, in such circumstances, remanded a moot case so that plaintiffs could file a new complaint, either by filing a new lawsuit or by obtaining leave to file an amended complaint. *Lewis v. Continental Bank*, 494 U.S. 472 (1990), demonstrates this principle. There, an Illinois bank challenged Florida

banking statutes before the case was mooted by amendments to the Bank Holding Company Act. *Id.* at 474. The Supreme Court explained that, when this happens, the case is moot, and if the plaintiffs have any "residual claim" involving the new law, they must file a new or amended complaint. *Id.* at 482 ("where the mootness is attributable to a change in the legal framework," and "where the plaintiff may have some residual claim under the new framework that was understandably not asserted previously," the Court would "remand for further proceedings in which the parties may, if necessary, amend their pleadings or develop the record more fully").

The Seventh Circuit has held the same. *See Nat'l Rifle Assoc. v. City of Chicago,* 393 Fed. Appx. 390, 390 (7th Cir. 2010) (unpublished) ("Plaintiffs are entitled to pursue [challenges to new ordinances] in new suits"); *see also Nat'l Rifle Assoc. v. City of Chicago*, 646 F.3d 992, 993 (7th Cir. 2011) (noting that after Court held that enactment of new legislation mooted challenge to gun ordinances, challenge by same plaintiffs to new ordinances were being litigated in new suits). And other circuits have reached the same conclusion. *See, e.g.*, *Kansas Judicial Review v. Stout*, 562 F.3d 1240, 1249 (10th Cir. 2009) ("But, if the plaintiffs wish to challenge the new canons, they must file a new complaint"); *Coleman v. Lyng*, 864 F.2d 604, 610 n.5 (8th Cir. 1988) ("The farmers can always challenge any shortcomings in the . . . new regulations and notice forms by filing a new lawsuit"); *cf. Clark v. City of Lakewood*, 259 F.3d 996, 1009 & n.6 (9th Cir. 2001) (holding that intervening local government moratorium "prevented the district court from

granting" relief requested in original complaint, and expressing "no opinion" on whether moratorium could be challenged by amended complaint or new lawsuit).

The FCCA requires the Illinois State Police to develop a system to ensure that applicants are 21 years of age, have a current valid Firearms Owners Identification Card, are not prohibited from possessing a firearm, have not been found guilty of either a violent crime or multiple violations of driving under the influence within the previous five years, are not the subject of a pending arrest warrant or prosecution for such crimes, have not been in an alcohol or drug treatment program within the past five years, and have completed the required level of firearms safety training. P.A. 98-0063 § 25. The ISP also must have procedures in place to conduct a background check on all applicants including a review of federal, state, juvenile, local, and Department of Human Services files and to check the applicants' fingerprints against federal and state criminal databases. *Id.* § 35. The ISP also must identify and approve firearms safety instructors qualified to teach the required training courses for permit applicants. *Id.* § 80. And the FCCA gives the ISP no more than 180 days to implement this permitting system, and no more than 90 days to process each application.

A new complaint would need to allege why the FCCA's 180- or 90-day periods are unconstitutional. In response, defendants would have the right to establish that these periods are reasonable in light of the licensing scheme the Illinois State Police is required to implement. *See Moore*, 702 F.2d at 942 (authorizing Illinois legislature to craft gun law that "impose(s) reasonable limitations, consistent with

the public safety and the Second Amendment." To prevail on a new complaint, therefore, plaintiffs would have to overcome defendants' showing that these requirements, which are consistent with the public safety, are unreasonable limitations on plaintiffs' Second Amendment rights. Finally, even if plaintiffs were to file a new complaint, and if after hearing evidence this Court concluded that some portion of the new law were unconstitutional, the Court would presumably need to determine which plaintiffs (and plaintiff Illinois State Rifle Association reports 27,000 members) are safely qualified to carry a ready-to-use firearm in public.

**Conclusion**

Because this case is now moot, this Court should dismiss plaintiffs' complaint for lack of jurisdiction. If plaintiffs wish to challenge some aspect of the FCCA, they must do so in a new complaint.

July 18, 2013                                               Respectfully submitted,

                                                                                               LISA MADIGAN
                                                                                               Attorney General of Illinois

                                                                                               CLIFFORD BERLOW
                                                                                                Assistant Attorney General

By:          s/ Karl R. Triebel
               KARL R. TRIEBEL, Bar # 6285222
               Assistant Attorney General
               100 West Randolph Street, 12th Floor
               Chicago, Illinois 60601-3218
               PHONE: (312) 814-2391
               FAX: (312) 814-5166
               EMAIL: ktriebel@atg.state.il.us

## CERTIFICATE OF SERVICE

   I certify that on July 18, 2013, I electronically filed defendants' **Memorandum In Support of Motion to Dismiss as Moot** with the Clerk of the United States District Court for the Southern District of Illinois using the CM/ECF system which will provide electronic notice to counsel:

William N Howard
Locke Lord LLP
111 South Wacker Drive
45th Floor
Chicago, IL 60606-4410
312-443-0333
Fax: 312-896-6433
Email: whoward@lockelord.com

Jonathan Lee Diesenhaus
Hogan Lovells LLP
555 13th Street, NW
Washington, DC 20004
202-637-5416
Fax: 202-637-5910
Email: jonathan.diesenhaus@hoganlovells.com

Charles J Cooper
Cooper & Kirk PLLC
1523 New Hampshire Avenue NW
Washington, DC 20036
202-220-9660
Fax: 202-220-9661
Email: ccooper@cooperkirk.com

Bleyer & Bleyer
Generally Admitted
601 West Jackson
P.O. Box 487
Marion, IL 62959-0487
618-997-1331
Email: jableyer@bleyerlaw.com

       By: s/ Karl R. Triebel
          KARL R. TRIEBEL, Bar No. 6285222
          Assistant Attorney General
          100 West Randolph Street, 12th Floor
          Chicago, Illinois 60601-3218
          PHONE: (312) 814-2391
          FAX: (312) 814-5166
          E-MAIL: ktriebel@atg.state.il.us