IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | | |
|---|---|---|
| MARY E. SHEPARD and the ILLINOIS STATE RIFLE ASSOCIATION, | ) ) ) | |
| Plaintiffs, | ) ) | No. 3:11-cv-00405-WDS-PMF |
| v. | ) ) ) | Honorable Judge William D. Stiehl |
| LISA M. MADIGAN, solely in her official capacity as ATTORNEY GENERAL OF ILLINOIS, GOVERNOR PATRICK J. QUINN, solely in his official capacity as Governor of the State of Illinois, TYLER R. EDMONDS, solely in his official capacity as the State's Attorney of Union County, Illinois, and SHERIFF DAVID LIVESAY, solely in his official capacity as Sheriff of Union County, | ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge Philip M. Frazier |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND TAXABLE COSTS**

**INTRODUCTION**

Plaintiffs brought this "action to vindicate the rights of citizens of the State of Illinois to bear arms, as guaranteed by the Second and Fourteenth Amendments to the United States Constitution." Compl., Doc. 2, ¶1. And that is exactly what they did. Plaintiffs secured a landmark Seventh Circuit decision confirming that the Second Amendment protects "a right to carry a loaded gun outside the home" and striking down Illinois's "flat ban on carrying ready-to-use guns outside the home." *Moore v. Madigan*, 702 F.3d 933, 936, 940 (7th Cir. 2012). In response to the Seventh Circuit's ruling, the State Legislature enacted a concealed-carry law that once operational will provide an avenue for the law-abiding citizens of Illinois to exercise their

1

right to carry a firearm to defend themselves in public, ending Illinois's ignominious status as the only State in the Union to deny its citizens that right.

Because Plaintiffs brought and won this case, the State of Illinois can no longer deny its citizens' fundamental right to bear arms in public. This is precisely the type of case Congress sought to foster when it authorized courts to award attorneys' fees to prevailing civil rights plaintiffs. Plaintiffs have "serve[d] as a private attorney general, vindicating a policy that Congress considered of the highest priority," *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) (citation omitted) (internal quotation marks omitted), and they are entitled to be recompensed for the fees associated with their efforts.

## BACKGROUND

On May 13, 2011, Plaintiffs Mary Shepard and the Illinois State Rifle Association filed a one-count complaint, alleging that Illinois laws prohibiting the carrying of firearms in public violated the Second Amendment and seeking declaratory relief to that effect and injunctive relief prohibiting the laws' enforcement. Plaintiffs named as defendants the Attorney General, Governor, State's Attorney for Union County, and Sheriff of Union County. (Collectively, "Defendants" or "the State"; Sheriff Livesay is represented by separate counsel but he has generally adopted the positions taken by the other defendants and we refer to all defendants together.)

On March 30, 2012, this Court granted Defendants' motion to dismiss, reasoning that the Second Amendment does not protect "the right to possess and carry a firearm to the area outside the home." *Shepard v. Madigan*, 863 F. Supp.2d 774, 785 (S.D. Ill. 2012).

Plaintiffs appealed and, on December 11, 2012, the Seventh Circuit reversed. "To confine the right to be armed to the home," the court reasoned, "is to divorce the Second

Amendment from the right of self-defense described in *Heller* and *McDonald*." *Moore v. Madigan*, 702 F.3d 933, 937 (7th Cir. 2012). Illinois's "blanket prohibition on carrying gun[s] in public" thus could not stand. *Id.* at 940. The Seventh Circuit did not simply reverse the dismissal of Plaintiffs' claim but also ordered entry of judgment on the merits for Plaintiffs:

> The Supreme Court's interpretation of the Second Amendment . . . compels us to reverse the decisions in the two cases before us [(*i.e.*, this case and the *Moore* case with which it was consolidated on appeal)] and remand them to their respective district courts for the entry of declarations of unconstitutionality and permanent injunctions.

*Id.* at 942.

The Seventh Circuit, however, stayed its mandate for 180 days—and later extended that stay an additional 30 days—"to allow the Illinois legislature to craft a new gun law." *Id*. On July 9, 2013, the extended stay expired and the Seventh Circuit's mandate issued "when no law had yet been passed." *Shepard v. Madigan*, __ F. Supp.2d __, 2013 WL 3874141, at *1 (S.D. Ill. 2013). Later that day, before this Court had an opportunity to respond to the Seventh Circuit's mandate, the Illinois Legislature enacted the Firearm Concealed Carry Act ("FCCA"), 430 ILCS 66/1 *et seq.* The FCCA creates a system whereby law-abiding citizens of Illinois can apply for and receive a license to carry a concealed handgun in public, although it gives the Illinois State Police until early January of 2014 to make application forms available and an additional 90 days to issue licenses. *See* 430 ILCS 66/10(d) & (e); 430 ILCS 66/999.

Immediately after passage of the FCCA, the State filed a motion to dismiss this case as moot. Plaintiffs opposed and responded with a motion of their own seeking entry of the declaration and injunction ordered by the Seventh Circuit.

On July 26, this Court granted the State's motion, denied Plaintiffs', and dismissed the case as moot. This Court reasoned that passage of the FCCA immediately mooted the case:

3

> The relief [Plaintiffs] received from the Seventh Circuit was exactly what they sought, a declaration of the unconstitutionality of [the carry ban]. And, as a result of that ruling by the Court of Appeals, the State of Illinois has now passed legislation which provides for the right, once the permitting process is completed, for plaintiffs to receive a permit from the State to carry a concealed firearm.

*Shepard*, 2013 WL 3874141, at *5. In other words, because the Court concluded that the FCCA had "given plaintiffs what they sought in the lawsuit filed in this Court," *id.*, it found that the case was moot.

Plaintiffs appealed, and this Court granted an agreed motion of the parties extending the time to request fees and costs to 30 days after issuance of the mandate resolving the appeal. Doc. 99 at 1-2.

On November 5, 2013, the Seventh Circuit affirmed this Court's decision. "[W]hile our mandate set a deadline for the enactment of a statute that would replace the statute that we were invalidating," the court reasoned, "we neither set a deadline for full implementation of the replacement statute by the grant of concealed-carry licenses to qualified applicants under the new statute nor prescribed a regulatory regime for the interim period." *Shepard v. Madigan*, 734 F.3d 748, 752 (7th Cir. 2013). The Seventh Circuit thus held that this Court "did not violate [the] mandate" and affirmed. *Id.* The Seventh Circuit's mandate issued on November 27.

## ARGUMENT

### I. Plaintiffs are Eligible for Attorneys' Fees as "Prevailing Parties."

Plaintiffs are eligible for an award of attorneys' fees because they are "prevailing parties" in a suit brought under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1988(b). A "prevailing party" is one "who has been awarded some relief by the court," *i.e.*, one who achieves "a court-ordered change in the legal relationship between the plaintiff and the defendant." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001) (brackets omitted) (internal quotation marks omitted). Thus, a party prevails when he "has

4

established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal." *Id*. at 604 (quoting *Hanrahan v. Hampton*, 446 U.S. 754, 757 (1980) (emphasis omitted)).

Plaintiffs are plainly prevailing under this standard. Indeed, the Seventh Circuit held that Plaintiffs were entitled not just to some but to complete relief on the merits. Plaintiffs' complaint consisted of a single count challenging Illinois's "flat ban on carrying ready-to-use guns outside the home," *Moore*, 702 F.3d at 940, and they sought declaratory and injunctive relief. *See* Complaint, Doc. 2 at 8-9. The Seventh Circuit held that Illinois's flat ban was flatly unconstitutional and that Plaintiffs were entitled to the relief they requested:

> Illinois had to provide us with more than merely a rational basis for believing that its uniquely sweeping ban is justified by an increase in public safety. It has failed to meet this burden. The Supreme Court's interpretation of the Second Amendment therefore compels us to reverse . . . and remand . . . for the entry of declarations of unconstitutionality and permanent injunctions.

*Moore*, 702 F.3d at 942. The Seventh Circuit, in other words, squarely "invalidated" the challenged "provisions of the Illinois gun law." *Shepard*, 734 F.3d at 749; *see also id.* at 750, 752.

The Seventh Circuit, to be sure, stayed its mandate "for 180 days"—and later extended the stay to 210 days—"to allow the Illinois legislature" the opportunity to "craft a new gun law." *Moore*, 702 F.3d at 942. The Illinois Legislature responded by passing the FCCA which, eventually, will provide Illinois citizens the opportunity to apply for and obtain a concealed carry license. *See* 430 ILCS 66/1 *et seq*.

This Court and the Seventh Circuit held that passage of the FCCA mooted this case and thus rendered entry of a declaration and injunction unnecessary, but that does not change the fact that Plaintiffs prevailed in this lawsuit. Again, the Seventh Circuit held unequivocally that Illinois's ban on carrying firearms in public violated the Second Amendment. And prevailing

5

party status turns on whether a party "ha[s] established the liability of the opposing party," not on whether "final remedial orders [have] been entered." *Hanrahan*, 446 U.S. at 757. It is undisputed that this case was live when the Seventh Circuit issued its decision on December 11, 2012 and its mandate on July 9, 2013. The later mooting of the case did nothing to undo the Seventh Circuit's determination that Plaintiffs had established their entitlement to relief on the merits of their claim and thus had established their eligibility for attorneys' fees. "A defendant cannot defeat a plaintiff's right to attorneys' fees by taking steps to moot the case after the plaintiff has obtained the relief he sought . . . ." *Young v. City of Chicago*, 202 F.3d 1000, 1000-1001 (7th Cir. 2000).

Furthermore, there can be no doubt that the State's repeal of the FCCA was the direct result of the Seventh Circuit's ruling in this case. *See, e.g.*, *Shepard*, 734 F.3d at 752 ("our mandate set a deadline for the enactment of a statute that would replace the statute that we were invalidating" and the state "met the deadline"); State Mot. To Stay Mandate for 30 Add'l Days at 3, *Moore*, Nos. 12-1269 & 12-1788 (7th Cir. June 3, 2013), ECF No. 73 ("The General Assembly has worked diligently toward the passage of a new public-carry law, consistent with [the Seventh Circuit's] decision."); State Mem. in Support of Mot. To Dismiss as Moot, Doc. 86, at 5 ("the General Assembly has accepted the Seventh Circuit's invitation to enact a new law"); State Mot. To Expedite Briefing, Doc. 77, at 2 ("The Illinois General Assembly responded [to the Seventh Circuit's ruling] by crafting a new" law.); State Mot. To Dismiss, Doc. 73, at 3 ("the State has complied with the court's judgment") (quotation marks omitted). Enactment of the FCCA, in other words, plainly bears the "necessary judicial *imprimatur*" for prevailing party status. *Buckhannon*, 532 U.S. at 605; *Palmetto Properties, Inc. v. Cnty. of DuPage*, 375 F.3d

6

542, 550 (7th Cir. 2004) (party prevailed when defendant repealed ordinance "only *after* that determination [of unconstitutionality] had been made and presumably *because of it*").

The conclusion that passage of the FCCA did not strip Plaintiffs of their prevailing party status follows directly from the Seventh Circuit's decisions in *NRA v. City of Chicago*, 646 F.3d 992 (7th Cir. 2011), and *Palmetto Properties*. *NRA* involved a post-*Heller* challenge to handgun bans enacted by the City of Chicago and the Village of Oak Park that culminated in the Supreme Court's decision in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), holding that the Second Amendment is incorporated against the States. Chicago and Oak Park swiftly repealed their handgun bans, mooting the case before it returned to the lower courts. They argued that this repeal precluded the plaintiffs from claiming prevailing party status. The Seventh Circuit rejected that argument because "[t]he litigation was over except for the entry of an injunction by the district court." *NRA*, 646 F.3d at 994. "Chicago and Oak Park capitulated, which made the exercise unnecessary," but that did not change the fact that the plaintiffs in that case were prevailing parties. *Id*. Here, too, the litigation was over except for entry of an injunction by the district court, and here too Plaintiffs are prevailing parties despite the repeal. Indeed, this result is even clearer here than in *NRA*, for *McDonald* addressed only the incorporation issue and did not formally hold that the challenged handgun bans were unconstitutional, while the Seventh Circuit in this case squarely held that Illinois's ban violated the Second Amendment.

*Palmetto Properties* likewise demonstrates Plaintiffs' entitlement to prevailing party status. There, the district court granted partial summary judgment to the plaintiff by holding that a county adult-entertainment zoning ordinance violated the First Amendment. Rather than entering judgment, however, the district court continued the case to allow the county time to repeal the ordinance. The county did so, and the district court dismissed the case as moot. *See*

*Palmetto Properties*, 375 F.3d at 549.  The county argued that the plaintiff was not a prevailing party because the district court never entered final judgment, but the Seventh Circuit emphatically disagreed.  "It would defy reason" and "fly in the face of legal intuit," the Court held, "to conclude that the district court's partial grant of a summary judgment would not constitute a 'judgment on the merits' adequate to confer 'prevailing party' status . . . simply because . . . the district court delayed in entering a final order to close the case."  *Id.* at 550, 551.  *See also Southworth v. Board of Regents of Univ. of Wis. Sys.*, 376 F.3d 757, 768 (7th Cir. 2004) (plaintiff prevailed on the basis of "the district court's order allowing the [defendant] to adopt new standards (and thus avoid a judgment against it)").  If this is true of a district court's partial grant of summary judgment, it must also be true of a court of appeals' resolution of all issues in a case in the plaintiffs' favor.[1]

## II.     Plaintiffs Are Entitled to a Fully Compensatory Fee Award.

As prevailing plaintiffs in this civil rights action, Plaintiffs "are entitled to their attorneys' fees 'as a matter of course.' "  *King v. Illinois State Bd. of Elections*, 410 F.3d 404, 415 (7th Cir. 2005).  Indeed, "the court's discretion to deny a fee award to a prevailing plaintiff is narrow," *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68 (1980), and limited to situations in which "special circumstances would render such an award unjust," *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quotation marks omitted).  In this case, it would be unjust *not* to award Plaintiffs' their attorneys' fees.  By establishing that the State of Illinois cannot flat-out prohibit its citizens from exercising their right to bear arms outside the home, Plaintiffs have vindicated a right that is "fundamental to our scheme of ordered liberty and system of justice."  *McDonald*,

---

[1] While the foregoing demonstrates that Plaintiffs prevailed in this litigation under binding Supreme Court and Seventh Circuit precedent, Plaintiffs reserve the right to argue that the Supreme Court should revisit its rejection of the "catalyst theory" as one basis for establishing prevailing party status.

8

130 S. Ct. at 3034 (emphasis omitted). "Fee shifting in such a case at once reimburses a plaintiff for what it cost him to vindicate civil rights and holds to account a violator of federal law." *Fox*, 131 S. Ct. at 2213 (brackets omitted) (citation omitted) (internal quotation marks omitted).

Because they obtained "excellent results" in this litigation, Plaintiffs "should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. Such a fee "[n]ormally . . . will encompass all hours reasonably expended on the litigation." *Id.*; *see also id.* ("fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit"); *Alliance To End Repression v. City of Chicago*, 356 F.3d 767, 771 (7th Cir. 2004) ("attorneys' fees incurred in interim defeats en route to a successful conclusion are compensable because . . . such skirmishes are indispensable inputs into a successful conclusion of litigation"); *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988) ("a losing argument in support of a successful claim for relief is fully compensable time"). This includes hours spent litigating a claim for attorneys' fees. *See Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980); *Kurowski*, 848 F.2d at 777.

A fully compensatory fee award also includes "expenses of litigation that are distinct from . . . the costs of the lawyer's time reflected in hourly billing rates." *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994). *See also Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984) (section 1988 "seeks to shift the cost of the winning party's lawyer . . . to the losing party; and that cost includes the out-of-pocket expenses for which lawyers normally bill their clients separately"). These include expenses for things such as copying, travel, and paralegals. *See Downes*, 41 F.3d at 1144.

Defendants cannot deny that Plaintiffs were entirely successful in this litigation. Indeed, they have trumpeted that fact both to this Court and to the court of appeals. *See, e.g.*, State Mem.

9

in Support of Mot. To Dismiss as Moot, Doc. 86, at 8 ("The blanket prohibition on carrying a loaded firearm in public—the sole focus of plaintiffs' complaint—no longer exists."); State Br. at 11, *Shepard*, No. 13-2661 (7th Cir. Aug. 9, 2013), ECF No. 21 ("Plaintiffs received everything they sought in their original complaint").

Plaintiffs, to be sure, resisted Defendants' contention in one respect, arguing that the challenged laws continue to injure them in the time period between enactment of the FCCA and full implementation of the concealed carry licensing system that the FCCA establishes. Both this Court and the Seventh Circuit, however, held that any complaints related to implementation of the FCCA are not the proper subject of this lawsuit. On all matters that the courts have deemed properly part of this lawsuit, Plaintiffs undoubtedly prevailed. Moreover, as outlined below, Plaintiffs do not seek fees relating to post-July 9, 2013 litigation relating to the mootness issue.

Indeed, given Defendants' invocation of Plaintiffs' success in this matter to convince this Court and the Seventh Circuit that the case had become moot, they should be judicially estopped from arguing that Plaintiffs' were anything other than wholly successful in this case. "[J]udicial estoppel . . . 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' " *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). That is precisely what would happen if the State were to change course and now attempt to convince this Court that Plaintiffs did not achieve everything they sought to achieve in this litigation. The purpose of judicial estoppel is to prevent this from happening.

In sum, "the most critical factor" in determining a fee award "is the degree of success obtained," *Hensley*, 461 U.S. at 436, and Plaintiffs succeeded entirely in this litigation apart from their efforts to resist a finding of mootness and to enforce the Seventh Circuit's judgment after

passage of the FCCA. Plaintiffs have excluded hours and expenses solely devoted to those matters from this fee request. In light of their success on the merits, Plaintiffs should be fully compensated for the hours spent and expenses incurred by their attorneys in this litigation, with the exception of hours spent on the effort to enforce the mandate and the mootness issue.

## III. Fee Calculation.

"The 'lodestar' figure" is "the guiding light of . . . fee-shifting jurisprudence." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). It is the "most useful starting point for determining the amount of a reasonable fee," *Hensley*, 461 U.S. at 433, and "there is a strong presumption that the lodestar figure is reasonable," *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (internal quotation marks omitted). The lodestar figure is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). A reasonable hourly rate is "to be calculated according to the prevailing market rates in the relevant community." *Id.* at 895. When "the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market," the "relevant community" may refer to a "community of practitioners," rather than any particular local market. *Jeffboat, LLC v. Director, Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009). And there is a presumption "that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). Furthermore, as explained above, the Seventh Circuit has made clear that reasonable-out-of-pocket expenses in addition to an attorney's hourly fees are compensable.

Plaintiffs have submitted evidence sufficient to calculate the lodestar figure for the fees they are requesting at this time, reflecting hours reasonably spent on this litigation minus, as

explained above, hours solely devoted to litigating the effect of passage of the FCCA on this case. As detailed below, that figure is $627,859.00, and that is the amount of hourly fees Plaintiffs are requesting at this time. (Plaintiffs note that they have included in this figure hourly rates charged for legal assistants, law clerks, and other non-attorney staff. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989) (affirming fee award "compensating the work of law clerks and paralegals . . . at the market rates for their services, rather than at their cost to the attorney").)

Plaintiffs are also requesting $12,441.65 in additional attorney expenses reasonably incurred in this litigation.

Should Plaintiffs prevail on this fee petition, they propose submitting supplemental materials detailing additional time reasonably spent in obtaining that success and any additional expenses incurred to be added to the figures set forth here.

Finally, although Plaintiffs submit that the evidence submitted with their motion fully supports the award they have requested, to the extent the Court concludes otherwise they request the opportunity to file any supplementary materials the Court deems necessary. *Cf.* Charles Alan Wright et al., 10 FED. PRAC. & PROC. § 2680 (3d ed.) (Rule 54 "does not require that the [fee] motion be fully supported at the time of filing by all of the evidentiary material bearing on fees.").

      **A.**    **Locke Lord LLP/Freeborn & Peters LLP**

Attorneys at Locke Lord and Freeborn & Peters, led by William N. Howard, have appeared as counsel for Plaintiffs throughout this litigation. Mr. Howard is a seasoned trial lawyer with more than 25 years of experience in complex litigation. *See* Declaration of William

N. Howard ("Howard Decl.") ¶¶ 1-2. He currently is a partner at Locke Lord.. *Id.* ¶¶ 1-3. At the outset of this case he was a partner at Freeborn & Peters. *Id.*

Mr. Howard's declaration sets forth the reasonable hours spent and expenses incurred in this litigation by Locke Lord and Freeborn & Peters and also establishes the firms' reasonable hourly rates.

Pursuant to that evidence, Plaintiffs are requesting $120,323.00 in attorney fees and $9,256.22 in expenses for work done by Locke Lord and Freeborn & Peters. *Id.* ¶¶ 6-14.

### B. Cooper & Kirk, PLLC.

Attorneys from Cooper & Kirk, led by founding partner Charles J. Cooper, have also served as counsel for Plaintiffs throughout this litigation. Mr. Cooper is an experienced Supreme Court litigator and former Assistant Attorney General for the Office of Legal Counsel. Declaration of David H. Thompson ("Thompson Decl.") ¶ 9(a). He has over 35 years of legal experience in government and private practice and has been named by the National Law Journal as one of the ten best civil litigators in Washington, D.C. *Id.*; Thompson Decl. Exhibit B. Mr. Cooper and other members of his firm have extensive experience litigating Second Amendment issues. Mr. Cooper and other attorneys from Cooper & Kirk have participated in seminal Second Amendment cases such as *Heller*, *McDonald*, and *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001). *See* Thompson Decl. ¶ 12. And they are currently participating in multiple cases involving the Second Amendment in state and federal courts across the country. *Id.*

Although Cooper & Kirk attorneys did not put in an appearance in this Court until after resolution of the initial appeal, they have been involved in this case from the beginning by, among other things, reviewing pleadings, drafting briefs and motions, and generally assisting with crafting Plaintiffs' legal arguments and strategy. *See* Thompson Decl. ¶ 8. *See, e.g.*, *Smith*

*v. Atlanta Postal Credit Union*, 350 F. App'x 347, 350 (11th Cir. 2009) (rejecting argument that fees incurred before entry of appearance were non-compensable). On appeal, Cooper & Kirk attorneys worked on drafting Plaintiffs' briefs, preparing for argument, and defending Plaintiffs' victory against Defendants' attempt to secure en banc review. Thompson Decl. ¶ 8. And, of course, Mr. Cooper successfully argued the case before the Seventh Circuit. *Id.*

David H. Thompson's declaration sets forth the reasonable hours spent and expenses incurred in this litigation by Cooper & Kirk and also establishes the firm's reasonable hourly rates. The rates claimed by Cooper & Kirk reflect the rates actually charged in this litigation. *Id.* ¶ 9.

Pursuant to that evidence, Plaintiffs are requesting $436,364.00 in attorney fees and $3,185.43 in expenses for work done by Cooper & Kirk. *Id.* ¶ 18; Thompson Decl. Exhibit A at 2.

**C. Stephen P. Halbrook.**

Plaintiffs also engaged the services of Stephen P. Halbrook in this litigation. Mr. Halbrook is an attorney and Second Amendment expert who has extensive experience writing about and litigating Second Amendment issues and whose work on these issues has been relied upon by the Supreme Court. *See District of Columbia v. Heller*, 554 U.S. 570, 614-15 (2008); *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3037, 3038 n.18, 3042-43 (2010) (opinion of Alito, J.). Mr. Halbrook has litigated numerous cases involving firearms law and the Second Amendment over three decades, including several cases in the United States Supreme Court. *See* Declaration of Stephen P. Halbrook ("Halbrook Decl.") at 2-3. He has written several books and law review articles concerning the Second Amendment, many of which include analysis of the right to bear arms outside the home in historical context. *Id.* at 3. Mr. Halbrook also has

14

testified in Congressional hearings numerous times on Second Amendment issues. *Id.* Mr. Halbrook assisted Plaintiffs by, among other things, reviewing and commenting on draft filings and generally consulting on the litigation. *See* Halbrook Decl. at 2 and Exhibit B thereto.

Mr. Halbrook's declaration sets forth the reasonable hours spent and expenses incurred in this litigation by Mr. Halbrook and also establishes his reasonable hourly rates.

Pursuant to that evidence, Plaintiffs are requesting $71,172.00 in attorney fees for work done by Mr. Halbrook. *See* Halbrook Decl. at 4.

## IV. Taxable Costs.

In addition to an award of fees under Section 1988, Plaintiffs also seek $791.00 in costs taxable under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920, as reflected in their bill of costs, also filed today. These are costs that "should be allowed to the prevailing party," FED. R. CIV. P. 54(d)(1), and, as explained above, Plaintiffs prevailed in this litigation. Both Section 1988 and Rule 54(d) use the same term "prevailing party," and Section 1988 allows the prevailing party "a reasonable attorney's fee *as part of the costs*" (emphasis added), indicating that a party awarded attorneys' fees is presumed to have also been awarded taxable costs. *Cf. Farrar v. Hobby*, 506 U.S. 103, 119-20 (1992) (O'Connor, J., concurring) ("when a court denies costs, it must deny fees as well; if there are no costs, there is nothing for the fees to be awarded 'as part of' "). For these reasons, "[a] number of . . . circuits have ruled . . . that, in general, a litigant who is a prevailing party for purposes of attorney's fees is also the prevailing party for purposes of costs." *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 101 (2d Cir. 2006). While the Seventh Circuit has suggested in dicta the possibility that "prevailing party" "has a different meaning in the context of costs as opposed to attorney's fees," *Petersen v. Gibson*, 372 F.3d 862, 868 (7th Cir. 2004), it has not suggested that it could be *harder* to establish entitlement to costs

than attorneys' fees. To the contrary, the court has explained that there is "a stronger presumption in favor of a prevailing party being awarded costs" than attorneys' fees. *Walker v. City of Chicago*, 513 F. App'x 593, 597 (7th Cir. 2013). In sum, Plaintiffs' should be awarded their taxable costs for the same reasons they should be awarded their attorneys' fees.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted, and this Court should award Plaintiffs $627,859.00 in fees, $12,441.65 in expenses, and $791.00 in taxable costs. In addition, this Court should grant Plaintiffs leave to file supplemental materials reflecting additional fees and expenses related to securing their fee award.

Dated: December 27, 2013

Respectfully submitted,

William N. Howard
LOCKE LORD LLP
111 S. Wacker Dr.
Chicago, Illinois 60606
Tel: (312) 443-0333
Fax: (312) 896-6433
whoward@lockelord.com

s/ Charles J. Cooper
Charles J. Cooper*
David H. Thompson*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com
*Admitted *pro hac vice*.

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned attorney states that he caused a true and correct copy of **Brief in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Taxable Costs** to be served upon the parties of record, as shown below, via the Court's CM/ECF system on the **27th** day of **December, 2013**.

By:    s/ Charles J. Cooper

## SERVICE LIST

Terence J. Corrigan
Illinois Attorney General's Office
500 South Second Street
Springfield, IL 62706
Tel: (217) 782-5819
Fax: (217) 524-5091
tcorrigan@atg.state.il.us

Jonathan Lee Diesenhaus
HOGAN LOVELLS LLP
555 13th Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5416
Fax: (202) 637-5910
jonathan.diesenhaus@hoganlovells.com

Karen L. McNaught
Illinois Attorney General's Office - Springfield
500 South Second Street
Springfield, IL 62706
Tel: (217) 782-1841
Fax: (217) 524-5091
kmcnaught@atg.state.il.us

Joseph A. Bleyer
BLEYER & BLEYER
601 West Jackson
P.O. Box 487
Marion, IL 62959
Tel: (618) 997-1331
jableyer@bleyerlaw.com

David A. Simpson
Illinois Attorney General's Office - Chicago 2
100 West Randolph Street
12th Floor
Chicago, IL 60601
Tel: (312) 814-3419
dasimpson@atg.state.il.us

Karl Triebel
Illinois Attorney General's Office - Chicago 2
100 West Randolph Street
12th Floor
Chicago, IL 60601
Tel (312) 814-2391
Fax: (312) 814-2253
ktriebel@atg.state.il.us