IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARY E. SHEPARD and the ILLINOIS )
STATE RIFLE ASSOCIATION, )
  )
    Plaintiffs, )
  )
    -vs- )    No. 11-405
  )
LISA M. MADIGAN, solely in her official )
capacity as ATTORNEY GENERAL OF )
ILLINOIS, GOVERNOR PATRICK J. )
QUINN, solely in his official capacity as )
Governor of the State of Illinois, )
TYLER R. EDMONDS, solely in his )
official capacity as the State's Attorney )
of Union County, Illinois, and SHERIFF )
DAVID LIVESAY, solely in his official )
capacity as Sheriff of Union County, )
  )
    Defendants. )

## DEFENDANTS' OBJECTIONS TO FEE PETITIONS

COME NOW the defendants, Lisa Madigan, Governor Patrick J. Quinn and Tyler

R. Edmonds, by and through their counsel, LISA MADIGAN, Attorney General of the State

of Illinois, and hereby respond to the fee petitions submitted by plaintiffs' counsel.  In

support thereof, the following statements are made.

## I  INTRODUCTION

Plaintiffs did not obtain any judicial relief which would make them prevailing parties.

At the time the litigation became moot the litigation had not achieved sufficient finality that

plaintiffs could be called prevailing parties in the absence of judicial relief.  Thus, under

controlling Supreme Court and Seventh Circuit authority, plaintiffs' petition for attorney fees

should be denied.

Even if the Court were to find that plaintiffs were prevailing parties, the fee petition

reflects excessive billing, contains numerous entries unrelated to the litigation, and fails to sufficiently document time to reflect that it was reasonably expended as part of the litigation and reflects legal, rather than clerical duties.  The petition also includes time that was spent representing another client.

## II.  ISSUES AND ARGUMENTS

### A.   FEE-SHIFTING IN A CIVIL RIGHTS CASE

The United States Supreme Court has reaffirmed the "American Rule" that each party in a lawsuit should ordinarily bear its own attorney's fees, unless there is express statutory authority to the contrary.  *Alyeska Pipeline Service Co. V. Wilderness Society*, 421 U.S. 240 (1975).  To be entitled to attorney's fees in a fee-shifting case, the party seeking fees must first show that he or she is a prevailing party.  *Buckhannon Board and Care Home v. West Virginia Department of Health and Human Services*, 532 U.S. 598 (2001).  *See also* 42 U.S.C. §1988.

If the plaintiff establishes that he or she is a prevailing party, attorney's fees are to be awarded, the normal method of calculating a reasonable fee is for the court to determine a "lodestar" amount by multiplying the number of hours reasonably expended on the case by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)(calculation of attorney's fees pursuant to 42 U.S.C. §1988 in a case brought under the civil rights statute).  This fee must be determined to be reasonable in light of market rates and market practices such that the fee would be deemed reasonable, if billed by an attorney to his own client.  *Hensley v. Eckerhart*, 461 U.S. 424.  Fees awarded to counsel in fee-shifting cases should not result in windfalls to prevailing counsel.  *Blum v. Stenson*, 465 U.S. 886, 893-94 (1984);  *Hensley* at 430, n.4.

2

**B.     Plaintiffs are not prevailing parties entitled to attorney fees**

Plaintiffs brought this action challenging certain provisions of the Criminal Code which prohibited the carrying of firearms in public, including a provision prohibiting the carrying of concealed weapons.  This Court dismissed plaintiffs' complaint for failure to state a cause of action.  Plaintiffs appealed and the U.S. Court of Appeals for the Seventh Circuit reversed and remanded for entry of relief. The Court stayed its decision in order to give the legislature time to arrive at its own solution.  The Illinois General Assembly amended the statutes and overrode a gubernatorial veto.  On remand this Court dismissed the case as moot because the relevant statutes had been amended.  Plaintiffs now seek an award of attorney fees, claiming that they are prevailing parties, even though the case was dismissed as moot without the award of any relief and the dismissal was upheld on appeal.

Plaintiffs are seeking fees pursuant to 42 U.S.C. §1988, which allows the court in its discretion to award attorney fees to prevailing parties in certain actions, including those brought pursuant to 42 U.S.C. §1983.  The United States Supreme Court held that parties cannot recover fees under what was known as "catalyst theory."  *Buckhannon Board and Care Home v. West Virginia Department of Health and Human Services*, 532 U.S. 598 (2001).  Under the "catalyst theory" parties were able to recover fees, notwithstanding the lack of a formal judgment in their favor, because the litigation had caused the defendant to voluntarily change its behavior.  *Id.* at 601.  The *Buckhannon* court found that the  term "prevailing party" means a party in whose favor a judgment is entered.   *Id.* at 603. "[E]nforceable judgment on the merits and court-ordered consent decrees create the

'material alteration of the legal relationship of the parties' necessary to permit an award of attorney fees.'" *Id.* at 604 (*quoting Texas State Teachers Assn v. Garland Independent School District*, 489 U.S. 782, 792-93 (1989). A judicial pronouncement that the defendant has violated the Constitution, unaccompanied by judicial relief is insufficient to qualify a party as a "prevailing party" for purposes of an award of attorney fees. *Buckhannon*, 532 U.S. at 605.

Notwithstanding the fact that plaintiffs acquired only a judicial pronouncement that the statute violated the Constitution and acquired no judicial relief,  plaintiffs argue that they are prevailing parties.  In arguing that they are entitled to fees, plaintiffs' misstate the holdings of cases on which they rely and ignore controlling contrary authority.

Plaintiffs torture some language in *Hanrahan v. Hampton*, 446 U.S. 754 (1980) to create a "quote" that prevailing party status "turns on whether a party 'ha[s] established the liability of an opposing party,' not on whether 'final remedial orders [have] been entered." Brief in support of motion for fees at 6.  The *Hampton* court made no such holding; and, if it  had, the holding would not survive the later holdings of *Buckhannon* and *Hewitt v. Helms*, 482 U.S. 755 (1987).

The language in question is culled from a discussion about awards of fees *pendente lite* in appropriate cases.  What the *Hampton* court actually said was:

> The Congressional Committee Reports described what were considered to be appropriate circumstances for such an award by reference to two cases - *Bradley v. Richmond School Board*, 416 U.S. 696 (1974), and *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375.  In each of those cases the party to whom fees were awarded had established the liability of the opposing party, although final remedial orders had not been entered."

4

*Hampton*, 446 U.S. at 757.  The *Hampton* court was not addressing the question of who was a "prevailing party" but rather was addressing when interlocutory awards could be made.  Both *Bradley* and *Mills* pre-dated 42 U.S.C. §1988 and both cases remained pending in the District Court at the time of the Supreme Court decision.

*Bradley* concerned protracted school desegregation efforts.  The court had granted some relief and was monitoring desegregation efforts by the parties.  *Mills* was a suit by shareholders to set aside a corporate merger.  The Supreme Court was addressing whether fees could be awarded in the absence of statutory authority or a common fund from which to pay fees.

*Hampton* held that plaintiffs could not recover fees based on an appellate decision reversing a directed verdict in favor of defendants.  The court did not hold that a plaintiff could recover fees absent the award of relief.

The Supreme Court addressed the question in *Hewitt v. Helms*, 482 U.S. 755 (1987).  There, the District Court granted summary judgment in favor of the defendants.  On appeal, the Third Circuit reversed, finding that the defendants had violated the plaintiff's constitutional rights.  *Id*. at 758.  After a stop in the Supreme Court to address another issue, the case was remanded to the district court, which granted summary judgment to defendants on the basis of qualified immunity.  *Id.*  The Supreme Court held that, to be a prevailing party, a plaintiff must obtain some relief on the merits.  *Id.* at 759-60.  The Court noted that neither a consent decree; nor a final declaratory judgment, injunction, or damage award had been entered.  *Id.*  The Court found that the holding of the appellate court that plaintiff's rights were violated could not be considered a declaratory judgment,

5

because among other things the defendant had to be given an opportunity to raise equitable defenses to a declaratory judgment.[1]  *Id.* at 762-63.

Plaintiffs do not cite to *Hewitt*.  Instead they cite the one paragraph decision in *Young v. City of Chicago*, 202 F.3d 1000 (7th Cir. 2000) for the proposition that "the later mooting of the case did nothing to undo the validity of the Seventh Circuit's determination that plaintiffs had established their entitlement to relief on the merits and thus had established their eligibility for attorneys' fees."[2]  In support, plaintiffs quote *Young* as stating, "A defendant cannot defeat a plaintiff's right to attorneys' fees by taking steps to moot a case after plaintiff has obtained the relief he sought."  *Id.* at 1000-01.

Plaintiffs fail to acknowledge that *Young* predated *Buckhannon*, so that the catalyst theory was an available route to fees; that the plaintiff in *Young* had obtained an enforceable injunction granting all the relief plaintiff sought; that the Seventh Circuit later narrowed the scope of *Young*; or that the court eventually completely rejected the proposition that a defendant cannot avoid fees by the mooting of a case after a finding of liability.  *Young* involved a case where the district court granted injunctive relief to allow plaintiffs to protest at the Democratic convention in 1996.  *Id.*  The city waited until after the convention to appeal and the appeal was dismissed as moot.  *Id.*  The city then objected to the awarding of fees.   Thus,  unlike  the pending case, the *Young* plaintiffs had

---

[1] The Court noted the availability of fees without a judgment through the catalyst theory, but found this plaintiff could not rely on this theory because he had been released and could not benefit from the alteration of defendants' behavior. *Buckhannon* later invalidated this theory.

[2] Contrary to this assertion, the Seventh Circuit has not held that plaintiffs were entitled to attorney fees.

obtained the relief they sought through an enforceable injunction.  The Seventh Circuit later explained that, "In *Young* the litigation had manifestly come to an end despite the lack of a final judgment on the merits.  Furthermore, our decision in *Young* was closely connected to our impression that the City deliberately had 'waited until the convention was over' in order to moot the case 'before a definition determination of its merits.'"  *Dupuy v. Samuels*, 423 F.3d 714, 720 (7th Cir. 2005).   In contrast, plaintiffs herein got relief through legislative action, not a court order.

The Seventh Circuit later held that, contrary to the *Young* quote, attorney fees were not appropriate when a case became moot after summary judgment for plaintiff and before final judgment.  *Zessar v. Keith*, 536 F.3d 788 (7th Cir. 2008).  In that case a class action complaint was filed challenging the fact that absentee voters whose ballots were rejected were not given an opportunity to challenge the restriction.  The court entered summary judgment in favor of plaintiffs.  *Id.* at 791.  The court held that the plaintiffs were entitled to injunctive relief and directed the parties to file proposed procedures to be utilized.  *Id.* While the court was considering the proposals, the legislature amended the statute.  The court refused to dismiss the case as moot, entered a declaratory judgment that the prior act was invalid, and held that the plaintiff was a prevailing party entitled to fees.  *Id.* at 792.

The Seventh Circuit reversed the declaratory judgment, finding that the case was mooted by the statutory amendment.  *Id.* at 793-95.  In rejecting the plaintiffs' claim for fees, the Seventh Circuit held that the summary judgment order was not an enforceable judgment, because the defendants were not directed to do, or refrain from doing, anything. *Id.* at 797.  The *Zessar* court distinguished at length the opinion in *Palmetto Properties, Inc.*

7

*v. County of DuPage*, 375 F.3d 542 (7th Cir. 2004), another case on which the plaintiffs rely. In that case, the plaintiff challenged the validity of an ordinance prohibiting him from opening an adult entertainment business. *Id.* at 543. The proposed business was 735 feet from a forest preserve, rather than the 1000 feet required by ordinance. *Id.* at 545. The District Court entered summary judgment finding that the zoning requirements were invalid and violated the First Amendment because they were not narrowly tailored and did not leave open alternative means of communication. *Id.* at 547. The court declared the ordinance unconstitutional. *Id.* The defendants informed the court that they would not appeal and asked the court to delay entering a final order until after they could amend the ordinance. *Id.* After the ordinance was amended and the plaintiff was free to open his nightclub, the court dismissed the case as moot, but awarded the plaintiff fees. *Id.* The Seventh Circuit affirmed.

The *Zessar* court found that *Palmetto* was distinguishable and not controlling. The court noted that both cases involved situations where, after finding a statute unconstitutional, the district court did not enter final judgment before the challenged provision was amended or repealed. *Zessar*, 526 F.3d at 796. The court added:

> This situation gives the plaintiff a hurdle to overcome if he is to show that he is a prevailing party because the Supreme Court has repeatedly held that, other than a settlement made enforceable by a consent decree, a final judgment on the merits is the normative judicial act that creates a prevailing party. 536 F.3d at 796.

The *Palmetto* court found that there was sufficient finality to the summary judgment order because the ruling "was succinct and easily enforceable - the forest preserve provision was unconstitutional and the defendants were enjoined from enforcing it."

8

*Zessar*, 536 F.3d at 797.  Moreover, all parties were in agreement regarding the finality of the court's decision as evidenced by the defendant's statement of its intention not to appeal and its request for a continuance to amend or repeal the challenged provision.  *Id.*

The district court case in *Zessar* lacked such finality because the terms of any injunction had not been decided.  *Id.*  Accordingly, there was no way to enforce the *Zessar* decision, because the defendant had not been ordered to do, or refrain from doing, anything.  *Id.*  "The lack of enforceable terms and disputed nature of the district court's partial summary judgment order distinguish it materially from that in *Palmetto*."  *Id.* Furthermore, unlike the plaintiff in *Palmetto,* who achieved the repeal of the only obstacle to his nightclub, the plaintiff in *Zessar* did not get exactly what he wanted and tried to challenge the new statute.  *Id.*  Accordingly, like in the instant case, the plaintiff in *Zessar* did not believe the case was over upon the amendment of the ordinance and  attempted unsuccessfully to obtain more relief directed at the new enactment.   *Palmetto* must be read in conjunction with cases that normally require a final judgment or consent decree to be termed final.  *Id.* at 798.  There are occasional cases which exhibit sufficient finality without a judgment and *Palmetto* was one.

Another case where the court found sufficient finality, without a final order, was *National Rifle Association v. City of Chicago*, 646 F.3d 992 (7th Cir. 2011).  After the United States Supreme Court held that the Second Amendment barred a federal ban on the possession of handguns in the home, suit was brought challenging similar bans by Chicago and Oak Park.  The suits were dismissed on the basis that the Second Amendment did not apply to the States and the Seventh Circuit affirmed.  The United States Supreme Court

9

granted *certiorari* and held that the Second Amendment applied to the states. *Id.* at 993. After the United States Supreme Court entered its decision, both defendants repealed the offending ordinances. *Id.* The Seventh Circuit found that the case had the finality necessary to make the decision final. The only question in that case, whether the Second Amendment applied to the states, had been definitively answered by the final arbitrator of such questions and nothing remained except for the court to enter an injunction prohibiting the cities from enforcing their prohibition on possession of handguns in the home. *Id.* at 994. Only this ministerial act remained undone at the time the ordinances were repealed.

The plaintiffs also misstate the holding of the final authority they cite for the proposition that they are prevailing parties. *Southworth v. Board of Regents of University of Wisconsin System*, 376 F.3d 757 (7th Cir. 2004). Plaintiffs contend that the *Southworth* court concluded that the plaintiffs in that case were prevailing parties simply because the defendants altered their behavior to avoid final judgment.[3] Brief at 5. That is not what happened in *Southworth*. Instead, the district court, after remand by the United States Supreme Court, entered final judgment and an injunction in favor of the plaintiffs. *Southworth v. Board of Regents of University of Wisconsin System*, 307 F.3d 566, 571 (7th Cir. 2002). The defendants appealed and the Seventh Circuit affirmed in part and reversed in part. *Id*. at 763-64. That was the last decision on the merits. *Id*. at 764. Plaintiffs, thus, obtained a final order and injunction granting part of the relief they sought. The issue in the case concerned the defendants' claim that the plaintiffs were not prevailing parties because the judgment had not caused the defendants to alter their behavior in a manner

---

[3]Such a holding would be directly contrary to *Buckhannon,* which rejected the catalyst theory.

that benefitted the plaintiffs.

In the cases where the Seventh Circuit has found finality, despite the lack of a final order, there was nothing left to be done except enter a final order granting injunctive relief. The terms of the final order that would be entered were definite and known to the parties without the final order.  In *Palmetto*, the court had to merely enter an order enjoining enforcement of the provision regarding proximity to a forest preserve, which was the only part of the ordinance held unconstitutional.  375 F.3d at 546.

In *National Rifle Association*, the only thing remaining to be done was to enjoin the prohibition on possession of handguns in the home.  That was the only issue in the case and the right to this relief had squarely been decided in *District of Columbia v. Heller*, 544 U.S. 570 n(2008) and *McDonald v. City of Chicago*, __ U.S. __, 130 S.Ct. 3020 (2010). *National Rifle Association*, 646 F.3d at 993.  Thus in both *Palmetto* and *National Rifle Association* all that remained to be done was performance of a ministerial act, entry of formal judgment. In the wake of *Heller* and *McDonald* it had been established that everyone who could lawfully possess firearms could keep those weapons in their homes. There was no room for the cities to regulate in this arena and nothing for a court to do except formally enter the relief sought.

The litigation in the present case was not over before the legislation mooted the issue by amending the statutes in question.  First, the time for filing a petition for a writ of *certiorari* had been extended to July 22, 2013.  *See* Exhibit #1.  Thus, had the legislature not mooted the question, the option of appealing the decision of the Seventh Circuit was available.

Second, the form of any relief to be granted by this Court had never been decided. While the Seventh Circuit held that the prohibition of all public possession of operable firearms on all streets and other public places was unconstitutional and ordered a remanded for entry of declaratory and injunctive relief, the Court did not mandate any specific form of injunctive relief.  The Seventh Circuit did not require, or even authorize, this Court to simply strike the statutes in their entirety without any regulation by the State.

As noted in the dissent from the denial of rehearing in the Seventh Circuit, there are numerous manners in which the State of Illinois may constitutionally regulate the possession of weapons outside the home, limiting the type of weapons that may be carried in public, the public places in which weapons can be carried, and the persons who can carry weapons in public. *Moore v. Madigan*, 708 F.3d 901 (7th Cir 2013)(Hamilton, J., dissenting).  In fact, the Court noted, "[A] state may be able to require 'open carry' - that is, require persons who carry a gun in public to carry it in plain view rather than concealed." *Moore v. Madigan*, 702 F.3d 933, 938 (7th Cir. 2012); *see also Heller*, 554 U.S. at 626.

Once a federal court has found a constitutional violation, any injunctive relief must be tailored to the extent of the violation.  *Al-Alamin v. Gramley*, 926 F.3d 680, 685 (7th Cir. 1991); *see also Lewis v. Casey*, 518 U.S. 343, 359-60 (1996).  Any remedy must be narrowly tailored.  *Al-Alamin v. Gramley*, 926 F.3d at 685.  "The power of federal courts to restructure the operation of local and state governmental entities is not plenary." *Dayton Board of Education v. Brinkman*, 433 U.S. 406, 419-20 (1977) (school desegregation case). "Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation."  *Id.*

Thus, if the case had not become moot, this Court would need to have fashioned a remedy, including determining whether there were places where, and persons against whom, the State could lawfully enforce its statutory prohibitions. Because the issue in both this Court and on appeal concerned the merits of plaintiffs' claim, neither side has had an opportunity to be heard on the scope of the relief to be awarded. If the case had reached that point, defendants would likely have urged the Court to follow the track of *Zessar* and ask the parties for proposed remedial plans. Because the State possesses regulatory power in this area, even after the *Moore* decision, the Court would have to consider the extent to which the statutes in question could lawfully be applied and balance public safety concerns. In any event, the question of relief was undecided when the case was remanded and, accordingly, the case falls squarely under the holdings of *Hewitt* and *Zessar*, which mandate a finding that plaintiffs are not prevailing parties.

*Zessar* held that, to be a prevailing party, a plaintiff must obtain some relief on the merits. Because the court, after declaring the statutes unconstitutional, was still weighing the proposed remedial plans, "[t]here was no way to enforce [the] grant of partial summary judgment because the defendants were not directed to do, or refrain from doing anything." *Zessar*, 536 F.3d at 797. "The lack of enforceable terms and disputed nature of the district court's partial summary judgment order distinguished it materially from *Palmetto*." *Id*. at 788.

This presents the exact posture of this case. Defendants were not ordered to do, or refrain from doing, anything. The terms of any relief had not been fashioned. Like the unsuccessful plaintiff in *Hewitt*, all plaintiffs received was an appellate court opinion which

13

did not grant relief against the defendants.  Such a judicial pronouncement of liability, without relief, is insufficient to make a plaintiff a prevailing party.  *Buckhannon*, 532 U.S. at 605.  As the  *Zessar* Court noted, at the time the legislature enacted the amended statute, "it was still acting on its own volition in response to the proceedings in the lawsuit." 536 F.3d at 798.  This case is indistinguishable from *Zessar* and that decision mandates a finding that plaintiffs are not prevailing parties.  They received no enforceable order or consent decree.  Defendants were never restrained or compelled in any fashion to alter their behavior to plaintiffs' benefit.  The case became moot before that could occur. Accordingly, plaintiffs'  motion for attorney fees should be denied.

## C.   FACTORS TO CONSIDER FOR ASSESSING FEES IF PLAINTIFFS ARE PREVAILING PARTIES

Defendants do not concede that plaintiffs are prevailing parties.  However, should this Court disagree, it may determine the reasonable fees to award.

Thus, for purposes of argument only, defendants object to the rate of counsel and the hours spent on the bases that they are neither reasonable nor appropriate.  As such, should this Court determine that some fees should be awarded, defendants request that the fees be reduced.

### 1.   The Lodestar

In determining what, if any, attorney's fee award is appropriate, the starting point is the lodestar.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The lodestar is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Id.* at 433.  This fee must be determined to be reasonable in light of market rates and market practices such that the fee would be deemed reasonable, if billed by an attorney to his own

14

client.

## 2.      The Hourly Rate

When calculating attorney's fees, the reasonable hourly rate is to be derived from the market rate for the services rendered. *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003). The starting point for determining an attorney's market rate is his opportunity cost; that is, the rate the attorney could have received from a client whom he charged by the hour for the same type of work. *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996). The opportunity cost is inferred from the actual rates that clients pay the attorney multiplied by the number of hours worked. *Youakim v. McDonald*, 171 F.R.D. 224, 229 (N.D. Ill. 1997). The actual billing rate for the attorney doing comparable work in that particular type of litigation is the presumptively appropriate market rate. *Denius,* 330 F.3d at 930; *Cooper*, 97 F.3d at 920. Any hours claimed that the court believes are based upon inaccurate or misleading records should be excluded. *Abkowicz v. West Bend Co.*, 789 F.2d 540, 550 (7th Cir. 1986).

In determining an award of attorney fees, the court must look to the rate the attorney actually charges his paying clients. *Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir. 1992). In any determination of the rate to be used for attorneys, the court should use the market rate. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999). The rate attorneys charge their paying clients is presumptively the market rate. *Id.* Those fees, however, are capped at the prevailing market rate in the community for comparable attorneys. *Cooper*, 97 F.3d at 920. If the court is unable to determine an actual billing rate for plaintiffs' counsel, the court should look to the next best evidence of the market rate, which includes the rate charged by other attorneys in the area. *Uphoff*, 176 F.3d at 407. While it is proper to look to the rates charged by other lawyers, this is to establish a cap upon the allowable

15

rate set at the prevailing market rate.  *Cooper*, 97 F.3d at 920.  Thus, plaintiffs' counsel is presumptively entitled to the rate he would charge his paying clients, but no more than the prevailing market rate.  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

*Cooper* and *Barrow* establish that the market rate for an attorney is set at what he can collect from a paying client.  "Judges have to be careful when they are spending other people's money."  *Cooper*, 97 F.3d at 920.  Thus, the market rate is set at what a client will pay willingly, not what the taxpayers are billed in another case.  *Id.*  Reasonable fees pursuant to 42 U.S.C. §1988 are to be calculated according to the prevailing market rates in the relevant community.  *Blum v. Stenson*, 465 U.S. at 895.

### 3.    Adequate Documentation

The party seeking an award of fees should submit evidence supporting the hours worked and the rates claimed.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Where the documentation of hours is inadequate, the court can reduce the award accordingly.  *Id.* at 433.  Incomplete or imprecise billing records preclude any meaningful review by the district court and therefore should be reduced.  *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000); *Greenfield Mills, Inc. v. Carter*, 569 F.Supp.2d 737, 760 (N.D. Ind. 2008).

### 4.    Duplication and Excessive Hours

Where the attendance by more than one attorney at the same conference, deposition, court proceeding, or trial is not justified, the fees should be reduced.  *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1160 (7th Cir. 1989).  Counsel for the prevailing party should make a good-faith effort to exclude from a fee request any hours that are

excessive, redundant, or otherwise unnecessary.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  The court should scrutinize a fee petition carefully for duplicative time.  *Jardien,* 888 F.2d at 1160.

### 5.    Secretarial Duties Should Not be Included

Tasks that are secretarial in nature, but performed by an attorney or paralegal are not compensable.  *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999).  The relevant inquiry is whether the work is sufficiently complex to justify the efforts of a paralegal or attorney, as opposed to someone who is clerical.  *People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1315 (7th Cir. 1996).

## D.    PLAINTIFFS' COUNSEL ARE NOT ENTITLED TO THE RATES REQUESTED

In the case at bar, defendants' counsel asked in discovery for evidence of the fee arrangement between plaintiffs and their counsel.   *See* Exhibit 2 attached hereto (Defendants' Interrogatories to Plaintiff, ¶1).  Plaintiffs' counsel provided only two contracts with Mary Shepard and none with the Illinois State Rifle Association.  Of the two contracts provided, the first is dated April 27, 2012, and is between Cooper & Kirk and Mary Shepard (*see* Exhibit #3).  The contract establishes that a third entity, the National Rifle Association, is responsible for paying the fees.  The contract was entered into 11½ months after the litigation commenced.   The second contract provided was between Mary Shepard and Locke Lord and is dated March 21, 2013.  *See* Exhibit #4.

There is no evidence of any contractual relationship for this litigation between Mary Shepard and Freeborn & Peters, much less any agreement to pay the rate which that firm now seeks.  Defendants asked in discovery and plaintiffs responded that the National Rifle

17

Association was funding the litigation.  However, plaintiffs' counsel (Freeborn & Peters) has refused to provide any contracts which establish the contractual relationship for this litigation.   Plaintiffs have the burden to establish that they are entitled to the fees requested. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  However, Freeborn & Peters has not established any attorney-client relationship with either plaintiff, despite being asked for this discovery.  For these reasons, the fee petition for Freeborn & Peters should be denied in its entirety.

Likewise, the contract between Mary Shepard and Cooper & Kirk does not start at the inception of the litigation and, despite being asked in discovery for evidence of contracts, Cooper & Kirk failed to provide anything other than Exhibit #3.  Thus, any bills for work claimed by Cooper & Kirk prior to April 27, 2012, should be denied.  Cooper & Kirk did respond in discovery that the litigation was being financed by the National Rifle Association.  However, plaintiffs' counsel has adamantly refused to provide any contract establishing the relationship Cooper & Kirk or Locke Lord have with the National Rifle Association to determine the agreement on fees.

The firm of Cooper & Kirk seeks fees of $78,318.50 for work performed prior to the time of their appeal from this Court's decision dismissing plaintiffs' original complaint.  Cooper & Kirk has provided no evidence of any contractual relationship with *plaintiffs* until April 27, 2012, *see* Exhibit #3  much later in the litigation.  In fact, during the time the case was pending in this court prior to the appeal and remand to the Seventh Circuit, attorneys from Cooper & Kirk represented only an amicus, the National Rifle Association.  Defendants asked for discovery in this case and were given a contract showing that Cooper & Kirk did not represent Mary Shepard until April 27, 2012.  No contract was

produced evidencing that they ever were engaged by the National Rifle Association. Defendants were given no documents indicating that plaintiffs have an obligation to pay Cooper & Kirk or Locke Lord for their time spent representing the National Rifle Association.  Surely if, at the time he asked for leave to file an amicus brief, Charles Cooper was also representing plaintiffs and the amicus brief was merely a method to avoid the brief limitations imposed by local rules, Cooper would have had an obligation to inform the Court of the fact.  *See Voices for Choices v. Ill. Bell Telephone*, 334 F.2d 542, 544 (7th Cir. 2003)(Posner, J in chambers)(noting use of amicus briefs to "make an end run around court's imposed limitations" on page limits).

Work on behalf of an amicus is not compensable unless the amicus was appointed by the court.  *Morales v. Truman*, 732 F.2d 728, 731 (5th Cir. 1987); *Vought v. Bank of America*, 2013 WL 3336883 at 2 (C.D. Ill. 2013).  Amici are not prevailing parties entitled to fees.  *Shaw v. Hunt*, 154 F.3d 161, 168 (4th Cir. 1998).  Neither work on amicus briefs nor efforts to enlist amici in support of a party's position are compensable.  *Glassroth v. Moore*, 347 F.3d 916, 918-19 (11th Cir. 2003).

Because Charles Cooper and Cooper & Kirk were representing an amicus, not a party during the time the case was in the District Court prior to the appeal, that time should be deducted from the requested fees.

Should this Court disagree with defendants' argument that Cooper & Kirk should not be compensated for the time they appeared on behalf of an amicus, defendants have alternative objections.  In many entries, there is insufficient detail to determine whether the claimed time is reasonable or necessary, and pursuant to *Hensley* should be denied.   In

other instances, the claimed fees are excessive, making them patently unreasonable. In yet other instances, the fees claimed are for hours not involving the litigation, but rather for lobbying activities or preparing others to lobby.  Such activities not directly involved in the litigation have been held to be noncompensable. Fees also are claimed for preparing press releases and secretarial duties.  Such fees are not compensable.  In *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 176 (4th Cir. 1994), in denying attorney's fees associated with public relations, the court stated that "[t]he legitimate goals of litigation are almost always attained in the courtroom, not the media."  In *Halderman v. Pennhurst State School and Hospital*, 49 F.3d 939, 942 (3d Cir. 1995), the court denied hours related to writing press releases, speaking with reporters, and engaging in public relations with the media.  The court stated that "[t]he fact that private lawyers may perform tasks other than legal services for their clients, with their consent and approval, does not justify foisting off such expenses on an adversary under the guise of reimbursable legal fees."  In *Greater Los Angeles Council on Deafness v. Community Television of Southern California*, 813 F.2d 217, 221 (9th Cir. 1987), fees for lobbying were determined to be properly denied by the district court.

In this case, one declaration from each of three counsel accompanied their fee petitions.  Cooper & Kirk then bolstered its filing by copying a declaration and fee petition from another case involving the Second Amendment. *See* Document #106.  The most useful exhibit of that pleading, however, the first and second pages of Exhibit G (Document #106, pp. 90-91 of 101), contain two entries for the market rate of attorneys in East St. Louis, Illinois.  Plaintiffs, however, have not adhered to the market rate in the East St. Louis

20

area, although they have provided in Exhibit G of their fee petition the rates charged by two St. Louis, Missouri firms.   This exhibit illustrates that attorneys at Bryan Cave range between $160 and $408 per hour and Lewis, Rice & Fingersh charged between $170 and $300 per hour.   Significantly, the instant case was litigated in East St. Louis, Illinois. Plaintiffs have provided this Court with the market rate for the East St. Louis area.  These are the market rates which should be used in this case, rather than the exorbitant fee rates requested by counsel.

For the reasons as stated in more detail hereinbelow, the fees should be reduced, if awarded at all.  Any such fees should be commensurate with the years of experience as charged by the St. Louis firm ranges.  Attorney Gustafson should be paid at the rate for first year attorneys, Patterson at the rate for a sixth year attorney, and Cooper, Moss, Neilsen, and Thompson at the 8th year rate.  As an alternative formula, the "blended rate" for the attorneys at Cooper & Kirk should be $375, as evidenced in Exhibit #14, which was provided in discovery and indicates the billing rate the firm accepted when paid by the State of Tennessee.

### 1.    Freeborn & Peters–Before the Appeal

The complaint in this case was drafted by two attorneys from Freeborn & Peters, LLP in Chicago: William Howard, who stated in his declaration that he had been practicing law since 1985, and Garry Wills, who has been practicing law for over 10 years *See* Document #106-2, ¶¶1, 7.  The one-count complaint was 10 double-spaced pages and consisted of 32 paragraphs.  According to the fee petition, drafting the complaint took this highly experienced legal team not less than 40.9 hours (22.6 hours at a rate of $475 per hour for Howard and 18.3 hours at a rate of $340 per hour for Wills) for which they claim

they are entitled to $16,957.  The hours spent on drafting the complaint, given their experience and the relative simplicity of the allegations are not justified.  As such, the hours spent should be reduced.

In addition to drafting the complaint, Wills spent 7.2 hours at a rate of $340/hour and David Thompson at Cooper & Kirk spent 2.9 hours at a rate of $565 per hour (for a total of 10.1 hours and $4086.50) investigating and analyzing the judges in the United States District Court for the Southern District of Illinois.  Since the judge was randomly assigned and counsel did not appear before Judge Stiehl (the case was decided in the district court on motions), this investigation was unnecessary and should not be awarded.

The attorneys at Freeborn & Peters also billed for several matters that were not related to the Shepard case, were clerical in nature, or are inconsistent with the declaration of William Howard.  For example, in ¶3 of his declaration, Howard claims that their "legal team" took "care to include attorneys with a lower billable rate to perform tasks commensurate with their experience such as discrete research assignments."  The members of the "legal team" are not identified by name in ¶3 of the declaration.  If the "legal team" consists of Howard, Garry Wills, John Costello, and Keith Gibson, it appears from the billing records that Wills became involved in the litigation in May 2011 at $340 per hour and increased his rate in February 2012 to $375 per hour.  Costello became involved in March 2013 and billed at $440 per hour; and Gibson became involved in June 2013 at $425 per hour.  Thus, the only members of the "legal team" at Freeborn in 2011 appear to be Howard and Wills.  However, when the "legal team" conferred on May 9, 2011; May 10, 2011; May 12, 2011; May 13, 2011, May 14, 2011; May 17, 2011; July 12, 2011; July 14, 2011; July 21, 2011; August 2, 2011; August 5, 2011; August 12, 2011; August 15, 2011;

August 19, 2011; September 16, 2011; September 21, 2011; September 22, 2011; September 23, 2011; January 17, 2012; January 23, 2012; February 3, 2012; February 5, 2012; February 8, 2012;[4] February 22, 2012; March 20, 2012; April 2, 2012; April 10, 2012; April 11, 2012; April 13, 2012; April 13, 2012; April 24, 2012; April 25, 2012; May 9, 2012; May 11, 2012; and May 14, 2012; the higher billing rate for Howard was used, not that of Wills.  "Legal team" as used by Howard does not seem to include the attorneys at the firm of Cooper & Kirk or Steve Halbrook since, with the exception of February 8, 2012, none of these other attorneys claims a corresponding "team meeting" with Howard.

Defendants have attached hereto Exhibit #5, which more fully documents the objections to the hours claimed by Freeborn & Peters.  As an example of over-billing *see* Exhibit 5-A in which it allegedly took William Howard 1/2 hour to review an eight paragraph motion requesting that the court defer ruling on the plaintiffs' motion for summary judgment until after there was a ruling on the motion to dismiss and the parties had engaged in discovery.  The eight paragraphs were contained on slightly more than one page.  The hours claimed by plaintiffs should be reduced accordingly.

In addition to the fees, defendants object to the following disbursements.  Plaintiffs give no explanation of what photocopies were made, how many copies were made, what the charge per page was.  They should thus, be denied, for failure to provide adequate documentation.  *See Harper v. City of Chicago*, 223 F.3d 593, 605 (7th Cir. 2000).

---

[4] David H. Thompson of Cooper & Kirk also billed 1/2 hour for preparing the same supplemental authority, which is a duplication of effort.  Thompson billed at $585/hour, which is higher than the rate of William Howard at $475 per hour.  Since this is duplicative, the rate billed was not at the lowest rate or ever reviewed for duplication as Mr. Howard claimed in his declaration.

Defendants also should not be required to bear the charges of counsel to become admitted to practice in this Court.  There were no invoices submitted for the service of process, Westlaw charges, expedited mail, or courier fees to determine if the charges were reasonable and related to this case or even necessary.  As such, they should be denied. *See* Exhibit #6.

### 2.      Cooper & Kirk–the Appeal

In 1996, the Seventh Circuit Court of Appeals cautioned that, if a party can attain competent counsel at a lower fee in a civil rights case, it was unreasonable for a lawyer who charged a higher rate to be awarded attorney's fees by the Court at his hourly rate. *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996).  The Court noted, however, that if "the lawyer gets $1000 an hour because he is five times as fast as the lawyer who charges $200 an hour, there would be no objection to his higher hourly fee ..." *Cooper*, 97 F.3d at 920.

The time claimed by the law firm of Cooper & Kirk can only be described as excessive. Although it took the "highly experienced" legal team of Freeborn & Peters 40.9 hours to draft the complaint, David Thompson also billed an additional 6.5 hours at $565 per hour.  At the time that he allegedly drafted the complaint, he did not represent the plaintiffs.  Rather, his law firm was an amicus for a nonparty.  When the defendant requested Cooper & Kirk to produce evidence of the contractual agreement with the plaintiffs, only two contracts were produced.  The first is dated April 27, 2012 (11-1/2 months *after* the complaint was filed and approximately one month *after* the appeal was filed).  *See* Exhibit #3.  The second is dated March 21, 2013 (shortly after the 7th Circuit denied the defendants' motion for rehearing en banc).  In light of the excessive hours

claimed by Freeborn & Peters and the fact that Cooper & Kirk had no contract to represent the plaintiffs and, instead, appeared as an amicus, the hours claimed by Thompson should be denied.

As noted in paragraph 8 of the Thompson declaration (*See* document #106-1), the attorneys at Cooper & Kirk did not appear for plaintiffs until the initial appeal in this case. These attorneys, who claim they are entitled to fees between $395[5] and $925.21[6] per hour spent not less than 60.8 hours[7] drafting the initial brief on appeal.  In this appellate brief, counsel recycled the same arguments made in the district court.  Indeed, very few hours for research are claimed in the fee petition; rather, counsel has indicated that the hours spent are on *drafting* the brief.  Further evidencing that counsel did little additional research is the 19.1 hours that it took the "cite checker" to assist with the brief.  Plaintiffs fail to identify the qualifications of John C. Brown, their cite checker, or exactly what he did to cite check.  Reviewing to verify that the cases used in support of the argument actually stand for the proposition for which they are cited is one matter, but reviewing to ensure that numbers have not been transposed is another – and a clerical duty for which attorneys' fees should not be charged.  These claimed hours should be reduced, since they claim that they have and were hired because of their "significant experience litigating Second Amendment issues."  *See* Doc. #106-1, ¶ 10(a).

---

[5] This is the rate claimed by Paul Patterson for 2011.

[6] This is the rate claimed by Charles Cooper for 2013.

[7] Charles J. Cooper claims 15 hours at $895 per hour; Paul Patterson claims 30.5 hours at $395 per hour; and David H. Thompson claims 15.3 hours at $585 per hour.

It also took five lawyers[8] and two other personnel[9] 75.2 hours to review and research the arguments made by the state defendants.  Most of those hours were on researching the historical arguments made by the state defendants.  If the attorneys at Cooper & Kirk are so experienced at Second Amendment issues as to justify their exorbitant rates in southern Illinois, these hours should be significantly reduced.

Two attorneys (Patterson and Thompson) claim to have spent 79.2 hours[10] on the reply brief.  The reply brief rehashed the same arguments made in prior briefs.  These hours are excessive and should be reduced.

As excessive as the time spend on the appellate briefs and research appears to be, the time spent on preparing for the oral argument is nothing short of shocking.  Charles Cooper, who asserts he is worth $895/hour, claims that it took him 97.8 hours to prepare for the oral argument.  Not only did the attorney who argued in the consolidated case spend less time preparing for oral argument, but he also charged a lower rate[11] – and both

_____

[8]Charles Cooper claims 1.2 hours at $895/hr; Adam Gustafson claims 38 hours at $355/hour; Howard Nielson claims 20.1 hours at $545/hour; Paul Patterson claims 1.2 hours at $395/hour; and David Thompson claims 8.8 hours at $585/hour.

[9]Lizzie Lipvsky claims 3.3 hours at $95/hour and Howard Slugh claims 2.6 hours at $120/hour.  The job titles and qualifications were not identified in the documents submitted to the Court.  Rather, Paragraph 11 of the Thompson declaration (*See* Doc. #106-1) indicates that the "additional Cooper & Kirk staff" includes legal assistants, law clerks, and summer associates.  Significantly, the declaration does not indicate that these were the job titles, so the "additional ... staff" could also include secretaries or other clerical type.

[10]Patterson claims 72.1 hours at $395/hour and Thompson claims 7.1 hours at $585/hour.

[11]Although defendants do not contend that the hourly rates charged by Alan Gura or David Sigale in the companion case of *Moore v. Madigan* are the appropriate market rates, in his fee petition, Gura claims that he spent 3.8 hours preparing for oral

achieved the same result.  The excessive hours claimed by Cooper should be denied.

However, the claim for fees associated with the oral argument does not stop with Charles

Cooper.  An *additional* 112 hours is claimed by his coworkers.[12]  This comes to 209.8 hours

to prepare for the argument, after the issues were fully briefed.  None of these coworkers

argued in the Seventh Circuit, although Paul Patterson claims that he is entitled to an

additional 3 hours to watch the 20-minute oral argument and David Thompson claims

entitlement of an additional 1.8 hours to watch the oral argument.  Neither Patterson nor

Thompson makes any attempt to explain why either are entitled to these excessive hours

or the disparity (3 hours versus 1.8 hours) between the claimed hours.

After the appeal, the parties submitted supplemental authority pursuant to Rule 28(j)

of the Federal Rules of Appellate Procedure.  Despite the letter and any response being

limited to 350 words (*see* Rule 28(j)), plaintiffs still spent 7 hours writing this letter.  The

time was excessive and should be reduced accordingly.

If this Court determine fees should be awarded, defendants object to the duplicative

excessive, and unnecessary hours.  Specific objections to the fee request of Cooper & Kirk

have been made in Exhibit #7.

### 3.    Time spent after the appeal on claims not attributable to the litigation

Plaintiffs have argued that they are prevailing parties because, after the decision by

the Seventh Circuit, the case was over and all that was remaining was a final order, similar

---

argument at a rate of $640 per hour.  *See* Moore v. Madigan, USDC C.D. Ill. 11-3134,
Document #59-6, p. 3 of 6.  David Sigale, his co-counsel, claims that spent 2.6 hours
assisting Gura prepare for the oral argument.

[12]Howard Nielson claims 5.6 hours at $545; Paul Patterson claims 49 hours at
$395/hour; and David Thompson claims 7 hours at $585/hour.

to the situation in *National Rifle Association v. City of Chicago*, 646 F.3d 992 (7th Cir. 2011). Yet despite their claim that the case was over, they claim they spent 231.4 hours, on this litigation after that date.   This is separate and apart from the efforts spent to collect attorney fees.

Most of the time was spent on legislative efforts, analysis, and planning, all directed toward influencing or attacking the legislation then pending in the legislature.   Other time listed was clearly related to other pending or contemplated litigation that had nothing to do with this case, including extensive research on home rule powers under the Illinois Constitution.   This was work that was unrelated to the pending lawsuit as the Seventh Circuit decided when it affirmed the order dismissing the case.   *Shepard v. Madigan*, 734 F.3d 748, 752 (2013).

Plaintiffs' efforts regarding the legislation pending in the General Assembly, whether lobbying, analyzing, or developing strategies to bring challenges to other situations do not constitute work on this case and are not recoverable.   *Webb v. Board of Education of Dyer County*, 471 U.S. 234, 242 (1985)(a prevailing party can only recover for work on the litigation); *Dupuy v. McEwen*, 648 F.Supp. 1007, 1021 (N.D. Ill. 2009) (a party cannot recover for legislative efforts).

Because plaintiffs have not adequately explained how it was reasonable for Cooper & Kirk to spend 9.1 hours of time and Freeborn & Peters/Locke Lord to spend 43.7 hours of time working on a case where there was nothing to do but wait for the General Assembly to enact new legislation for the Seventh Circuit to lift the stay, the entirety of this amount should be disallowed.   As demonstrated more fully in Exhibit #7  this work did not contribute to plaintiffs' claimed victory or it was for work done on legislative matters, rather

than on this litigation.  As held in *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 176 (4th Cir. 1994), *Halderman v. Pennhurst State School and Hospital*, 49 F.3d 939, 942 (3d Cir. 1995), and *Greater Los Angeles Council on Deafness v. Community Television of Southern California*, 813 F.2d 217, 221 (9th Cir. 1987), these matters were not compensable and this court should also hold plaintiffs' claimed fees uncompensable.

### 4.    Steven Halbrook

His declaration and fee petition can be summed up as follows:

He has been practicing law for 36 years after graduating from Georgetown University Law Center.  He has a Ph.D. in philosophy.

He writes, lectures, and teaches about gun laws.  As such, he keeps current on cases throughout the United States.  Because he kept watch over cases in the U. S. Supreme Court, the 1st, 2nd, 4th, and 9th Circuits, and the Illinois Supreme Court as a matter of his teaching and lecturing duties, he should not be compensated in this litigation for the same effort.  Although he normally charges between $475 and $540 per hour, he has accepted $400.00/hour during the pendency of this litigation from a paying client.[13]

He did not enter an appearance in this case and, although discovery was requested, failed to produce any contract he had with any party in this case.  He "attest[ed] that all of

---

[13]Defendants requested discovery in this case.  In response, two additional documents were served on behalf of Mr. Halbrook.  *See* Exhibit ##8, 9.  All of the itemizations of work performed has been redacted.  Noteworthy, however, is that Mr. Halbrook charged the National Rifle Association $400 per hour in January 2012, (Exhibit #8) during the pendency of this litigation, but not until December 2013 did he charge $540 per hour to some unidentified client (Exhibit #9).  There is no indication that he actually received the $540 per hour in December 2013.  Further, there is no indication that Mr. Halbrook had any contractual relationship with either of the plaintiffs in this case, and therefore, his claim for fees should be denied.

the hours submitted herein were reasonable and necessary in order to furnish adequate representation to my clients in this case."  *See* Document #106-3, p. 2, §1.  Thus, according to Halbrook, he should be entitled to the maximum hourly rate he charges clients for matters he monitors from his normal writing and speaking engagements.

The time claimed in this case consists of short phrases such as "preparation of memo," "e-mail," and "legal research" without explaining any context or giving sufficient details to determine whether he performed secretarial duties.  As such, this Court should deny each of the entries for lack of specificity.

Many of the requested fees are unreasonable for additional reasons.  Mr. Halbrook claims to have spent 3.6 hours e-mailing and preparing comments on May 11, 2011, and 4.8 hours drafting the complaint on May 12, 2011, plus an additional 3.6 hours reviewing the drafts of the complaint on May 13, 2011, the day that the complaint was filed in the district court, for a total of 12 hours at $540 per hour or $6,480.  What makes these 12 hours remarkable is that William N. Howard of Freeborn & Peters spent 21.3 hours drafting the complaint; Gary L. Willis spent 18.3 hours drafting the complaint, and David H. Thompson at Cooper & Kirk spent 6.5 hours drafting the complaint. Thus, according to the records submitted in support of the fee petition, it took 4 lawyers 58.1 hours to draft a 10-page, 1 count, 32 paragraph complaint. Mr. Halbrook also claims to have spent 15.9 hours of unspecified work supporting the motion to dismiss and reviewing defendants' opposition to the motion for injunctive relief.

Mr. Halbrook claims to have spent 2.8 hours on a phone conference with unspecified counsel and reviewing another file on May 26, 2011.  Curiously, none of the

other counsel who have claimed time in this case have any entries indicating such a telephone conference with Mr. Halbrook.  On June 22, 2011, Mr. Halbrook claims he reviewed the docket and a motion for 12 minutes.  Up to that point, two short motions for extension of time (one on behalf of the State defendants and one on behalf of the Sheriff) had been filed.  On July 14, 2011, according to the records of Mr. Halbrook, it took him 12 minutes to send the preliminary injunction motion as an attachment to an e-mail.  On September 5, 2011, Mr. Halbrook claims to have spent 24 minutes to review a 2-page memo filed by the defendants in which they requested the court to defer ruling on the plaintiffs' motion for summary judgment until after there was a ruling on the motion to dismiss and, if necessary, discovery could be conducted.  Mr. Halbrook claims to have spent 18 minutes on September 27, 2011, on a telephone conference with unspecified counsel.  However, no other counsel seeking fees in this case claims to have participated in the telephone conference with Mr. Halbrook on that date.  As detailed in Exhibit #10  if Mr. Halbrook is awarded any fees, they should be reduced accordingly.

      **5.**    **Locke Lord**

Locke Lord submitted a contract which purports an arrangement to provide legal services to Mary Shepard as of March 21, 2013. *See* Exhibit #4.  Any request for fees prior to that date as requested by Locke Lord (3.1 hours) should be denied, since there was no agreement or contractual relationship to provide services.  Further, since the National Rifel Association is alleged to have paid the fees and counsel has refused to provide that contract in discovery in litigation, plaintiffs have failed to meet their burden of establishing their entitlement of shifting fees from plaintiffs to the defendants.

31

Should this Court determine that Locke Lord is entitled to fees, defendants have additional objections.  Those objections are identified in Exhibit #11.  As an example of overbilling, *see* the entries for August 15, 2013 and Exhibits 11-A, 11-B.  Exhibit 11-A indicates that a one-sentence e-mail which fit on one line took Keith Gibson 12 minutes to draft; the same day it took him an additional 12 minutes to type two sentences which fit on two lines.

**E.      SOME COSTS SHOULD NOT BE ASSESSED**

Freeborn & Peters claim costs for unidentified photocopying, legal research, service of the summonses, courier services, being admitted to practice in the Southern District bar, express mail, binding of pleadings, a transcript, and the fee charged for the appeal.  The is no specification of what the photocopying was for or how many pages and thus the rate per page has not been established to determine whether it is reasonable.  The legal research does not specify what the topics researched are to determine whether it was reasonable.  There was no invoice from the process server to establish the reasonableness of this charge.  There also was no invoice from the court reporter who transcribed some proceeding (there were no hearings in the case at bar) to establish that this was necessary or reasonable.  There was no invoice from the courier service to indicate why hand delivery was necessary, to whom it was made, or the rate of the service to determine reasonableness.

Each of the pleadings filed in the district court was done electronically.  For this reason, any charge for binding is not specific for why it was necessary or reasonable.  Plaintiffs also claim charges for the filing of the appeal, but this was requested and

32

awarded from the appellate court; as such, the request herein is duplicative.  In addition, the defendants should not be required to bear the costs for plaintiffs' counsel to become admitted to practice in this bar.

Likewise, the charges in the expense record for Locke Lord are not specific.  For example, there is no indication of what the rate or the necessity for the delivery services are, the rate of hotel accommodations and meals, and the mode for the out of town travel to determine whether these costs are reasonable.  Counsel has not explained why he needed to travel to see his client, rather than his client coming to him.  Counsel also has not explained why the travel was necessary at the time when he engaged in the visit, since the complaint had been filed ten days prior to the meeting with his client in Cobden.

As the Supreme Court stated in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)*,* the claim for costs must be supported.  If imprecise billing records are submitted, the costs should be reduced.  *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000). For these reasons, the costs as addressed more fully in Exhibits ##6, 12, 13 should be denied.

### F.    THE FEE PETITION

A fee petition "should not result in a second major litigation."  *Hensley v. Eckerhart,* 461 U.S. at 437.  *See also Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 654 (7th Cir. 2011).  Nonetheless, between the three law firms, their lawyers claim to have spent 86.9 hours preparing the fee petitions prior to December 27, 2013.  As such, this does not include their unsuccessful attempt to defeat having to provide discovery or their paltry responses to the discovery requests.  Plaintiffs' counsel knew they would claim fees if they

33

prevailed.  The time claimed should have been kept contemporaneously.  At the conclusion

of this litigation, it should not take counsel an extraordinary number of hours to draft a fee

petition.  As such, the hours claimed should be reduced.

It is impossible to tell from the fee petition what if any time was spent on clerical

tasks related to producing time records by nonattorneys.  Further, some of the time is

duplicative and excessive.  As demonstrated in Exhibit ##5, 7, 10, 11 if fees are awarded

at all, they should be reduced accordingly

## CONCLUSION

Plaintiffs were not prevailing parties and their petition for attorney fees should be

denied.   In the alternative, plaintiffs' fee request should be  substantially reduced in

accordance with defendants' objections.

WHEREFORE for the above and foregoing reasons, defendants, Lisa Madigan,

Governor Patrick J. Quinn and Tyler Edmonds, request that this honorable Court deny the

plaintiffs' attorneys' fee petitions.   In the alternative, defendants request that the fee

petitions be reduced.

<div style="margin-left: 40%;">

Respectfully submitted,

LISA MADIGAN, GOVERNOR PARTICK
J. QUINN and TYLER EDMONDS,
   Defendants,

LISA MADIGAN, Attorney General
State of Illinois,
       Attorney for Defendants.

</div>

Terence J. Corrigan, #6191237
Assistant Attorney General
500 South Second Street
Springfield, IL  62706            By:  s/Terence J. Corrigan
(217)782-5819                  Terence J. Corrigan
Of Counsel.                   Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2014, I electronically filed Defendants' Objections to Plaintiffs' Fee Petitions  with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

William N. Howard
Jeffrey M. Cross
Freeborn & Peters LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606
whoward@freebornpeters.com
jcross@freebornpeters.com

Charles J. Cooper
David H. Thompson
National Rifle Association of America, Inc.
1523 New Hampshire Avenue NW
Washington, D.C.  20036
ccooper@cooperkirk.com
dthompson@cooperkirk.com

Joseph A. Bleyer
K. Rockne Bleyer
Bleyer & Bleyer
601 W. Jackson Street
P.O. Box 487
Marion, IL 62959
jableyer@bleyerlaw.com
kbleyer@bleyerlaw.com

Jonathan L. Diesenshaus
Hogan, Lovells US, LLP
555 Thirteenth Street NW
Washington, D.C.  20004
jonathan.diesenhaus@hoganlovells.com

and I hereby certify that on April 24, 2014, I mailed by United States Postal Service, the document to the following non-registered participant:

None

Respectfully submitted,

/s/Terence J. Corrigan
Terence J. Corrigan
Assistant Attorney General
500 South Second Street
Springfield, IL  62706
Telephone:  (217) 782-5819
Facsimile:  (217) 524-5091
tcorrigan@atg.state.il.us